## TOM CROW v. THE STATE.

### No. 5942.　Decided April 6, 1921.

1.—Murder—Death Penalty—Jury and Jury Law—Rule Stated—Empaneling Juror.

When a juror has been sworn in a capital case, he is empanelled, and must remain upon the jury to the termination of the trial. The court has no power to excuse a juror empanelled in a felony case. In case of sickness. or accident, rendering it impracticable to proceed with the trial, of the case before the jury, as then constituted, the only course the court can take is to discharge the jury and to proceed to form another. Following Sterling v. State, 15 Texas Crim. App., 249, and other cases.

2.—Same—Discharging Juror—Case Stated—Practice in Trial Court.

Where, upon trial of murder inflicting the death penalty, it appeared from the record on appeal that the two jurors who had already been selected were white men, and that they objected to the court to sit upon the jury with a negro who was then empanelled, and after three other white jurors were selected and sworn in the case, further objection arose to said negro juror, and the court, following the suggestion of the attorneys, then excused said negro juror from further service on the jury, in the absence of defendant the same was reversible error. Following Ellison v. State, 12 Texas Crim. App., 557, and other cases.

3.—Same—Empanelling Juror—Felony Case—Rule Stated.

After a juror has been once empanelled in a felony case, it is beyond the power of the court to excuse him from serving in the case, and in case of sickness and accident rendering it impracticable to proceed with the trial of the case, before the jury as then constituted, the court should discharge that jury and proceed to form another for the trial of the case. Following Hill v. State, 10 Texas Crim. App., 618, and other cases.

4.—Same—Defendant's Presence—Rule Stated—Felony Trial.

In all prosecutions for felony. the defendant must be personally present on the trial, and the selection of the jury is a most important part of the trial both from the standpoint of the State and the defendant. Following Upchurch v. State, 36 Texas Crim. Rep., 624, and other cases.

5.—Same—Special Venire—Practice in Trial Court—Affidavit of Juror.

The law now permits a juror to file an affidavit presenting certain excuses and making it unnecessary in that instance for him to appear in person; but unless such affidavits are on file, the trial judge should not excuse veniremen except in open court in the presence of the defendant, except in very rare instances.

6.—Same—Jury and Jury Law—Special Venire—Practice in Trial Court.

Where the defendant requested the court to have all the veniremen called and their general excuses heard, in order that he might know who

among the venire were left to be examined further, on their *voire dire*, so that he might know how better to exercise his challenges, the request should have been granted.

#### 7.—Same—Empanelling Jury—Practice in Trial Court.

Where the court adopted the plan, not of having all the jurors sworn and tested primarily, and to render excuses, but called them in fours at the time, this was a practice not to be encouraged.

#### 8.—Same—Special Venire—Practice in Trial Court.

The request of the defendant to have the special veniremen excluded from the courtroom during their examination on their *voir dire*, and have them called in one at the time for this purpose, and that after selection, the jury should be retired from the courtroom in charge of an officer, the request should have been granted, although this matter should be left largely to the discretion of the trial judge. Following Streight v. State, 62 Texas Crim. Rep., 453.

#### 9.—Same—Evidence—Judgment of Divorce.

Upon trial of murder, there was no error in excluding the judgment of divorce between deceased and her first husband, nor the certificate of the death of the husband's first wife.

#### 10.—Same—Evidence—Irrelevant Testimony.

Upon trial of murder, testimony that a State's witness and the deceased on more than one occasion engaged in carnal intercourse with various men, should not have been admitted.

#### 11.—Same—Evidence.

Where the State alleged that deceased was killed by poison administered in brandy, testimony offered by the defendant to prove that deceased indulged to some extent in the use of intoxicating liquor should have been admitted, under the facts of the instant case.

#### 12.—Same—Evidence—Declarations of Deceased.

Upon trial of murder, where the defendant claimed suicide of the deceased, testimony as to the expressions of despondency of deceased should have been admitted under the facts of the instant case.

#### 13.—Same—Evidence—Privileged Communications—Physician and Patient.

Upon trial of murder, where the evidence showed that the deceased was afflicted with syphilis, which is practically an incurable disease, and the defendant claimed suicide of deceased, testimony of the physician who treated deceased for said ailment should have been admitted, and could not be excluded on the ground of privileged communication. Following Stegald v. State, 22 Texas Crim. App., 464.

#### 14.—Same—Argument of Counsel—Practice on Appeal.

Where the judgment is reversed and the cause remanded upon other grounds, complaints as to the arguments of counsel and misconduct of the jury need not be considered on appeal.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Mauermann & Hair,* and *Hobart Hudson,* and *Joe H. H. Graham,* for appellant.—Cited cases in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—The appellant was convicted of the murder by poison of Mrs. Ora Parker, and his punishment assessed at death.

The deceased and appellant lived in San Antonio and had been acquainted with each other for a number of years. Mrs. Parker at the time of her death was living with her husband, F. E. Parker, and a young daughter of F. E. Parker by a former marriage, and Miss Leila Polan also occupied a room in the Parker home. On January 23, 1920, the deceased came to the mercantile establishment where Miss Polan was employed, and the two left there together and went to the office of a chiropractor for treatment; while on this trip the deceased bought a loaf of bread and some eggs, and some candy for the little girl, after which she and Miss Polan returned to the store. Miss Polan resumed her work and the deceased left, intending to go to the office of a Dr. Ross, which she seems to have done; after leaving his office she seems to have gone with appellant in an automobile and after that time was never seen alive; five days later her body was discovered in the San Antonio River. She was in the habit of wearing diamond rings and diamond ear screws, and when her body was discovered all of this jewelry was missing. For some reason, undisclosed in the record, suspicion seems to have pointed towards this appellant and he was arrested in the city of Houston. From statements made by him, one of the diamond rings was found in San Antonio, where he had sold it, and other jewelry was found in an old shoe in a room he had occupied in Houston. Appellant denied having killed the deceased, but admitted that they had been out driving, and that she died suddenly while in his company, and that he took her rings and other jewelry after her death and threw the body into the San Antonio river. Upon an examination and analysis of the contents of deceased's stomach it was determined that her death resulted from sodium cyanide. Appellant, upon being interrogated as to the probable cause of deceased's death, claims to have found upon the seat of the car that he and deceased occupied on the evening of her death a small box containing a powder which he told the officers they would find in his, appellant's trunk. As a result of this information this box was found, and the contents discovered to be the same kind of poison found in the stomach of deceased. It was the theory of the State that appellant had administered the poison to deceased in brandy; it was the theory of the appellant that deceased had committed suicide. In support of the suicide theory appellant offered a witness who testified that upon one occasion in the presence of deceased they were discussing the suicide of a friend of the witness, and that he said he understood that the suicide was committed by the use of sodium cyanide, and that later on de-

ceased asked him to secure some of this poison for her, which he claims to have done, and delivered to her. It is not necessary to make a more extensive statement of the facts than has already been hereinbefore set out.

We are met right at the threshhold of this case with an assignment of error which, in our opinion, will necessitate a reversal. After two jurors had been selected, the third juror accepted by both the State and defendant was one Harper, a negro. It appears from the record that the two jurors who had already been selected were white men and that they began to make objections to the court at having to sit upon a jury with a negro. After the juror Harper was sworn, three other white jurors were selected and sworn in the case, and after court had adjourned for the day and the appellant had been taken back to jail, some conversation arose between the special prosecutor for the State, the attorneys representing the appellant and the trial judge, with reference to the negro juror Harper, and the complaint that was being made by the other jurors. The special prosecutor and the attorneys for appellant agreed that Harper might be excused, and the judge suggested that he have the defendant brought back into court and the jury returned to court and the matter be disposed of regularly in that way; the judge says counsel for appellant assured him that it was not necessary to do this as the question would never be raised and agreed that he should direct the deputy sheriff to excuse the juror Harper, which was done. The appellant at this time was not present, but was in jail and so far as the record discloses had no knowledge of what had been done until court opened the next morning. Subsequent to this proceeding another attorney entered the case for appellant, and notified the district attorney that he would not be bound by the agreement his co-counsel had made, but reserved the right to raise the question of the excuse of the juror Harper at any time he saw proper. The jury was completed and the trial proceeded, with the result as heretofore indicated; and the action of the trial court is now before us upon this question for review. It becomes the duty of this court to determine the legal phase of the matter only. We will not discuss the effect of a personal assent by the defendant to the discharge of a juror already sworn nor the effect of agreement thereto by his counsel in open court in defendant's presence. These issues do not arise in this case. Court was not in session, and the defendant was absent when the proceeding complained of was had. The exact question now before this court is: "After a juror is impaneled in a capital case, can the trial judge excuse such juror, in the absence of the defendant?" When was the juror Harper impaneled, and what was the effect of his discharge under the circumstances?

In Sterling v. State, 15 Texas Crim. App., 249, after six jurors were sworn, one of them, McFarlane, advised the court that some of his family were ill, and requested permission to go home and spend the night. Defendant and his counsel agreed that he might go with an of-

ficer; but the court insisted that they agree to a discharge of said juror; finally defendant's counsel did agree, and defendant being present, made no objection, and the juror was discharged. Judge WILSON, speaking for this court in reviewing the incident, said:

"It has been settled by the decisions of this court that when a juror has been sworn in a capital case he is impaneled, and must remain upon the jury to the termination of the trial. The court has no power to excuse a juror impaneled in a felony case. In case of sickness or accident rendering it impracticable to proceed with the trial of the case before the jury as then constituted, the only course the court can take is to discharge the jury and to proceed to form another. Hill v. State, 10 Texas Crim. App., 618; Ellison v. State 12 Texas Crim. App., 557. True, the defendant might waive the provisions of the law requiring jurors impaneled to be kept together until the termination of the trial, etc. (Code Crim. Proc., Art. 23); but such waiver must be expressly made by the defendant himself, and cannot be made by his counsel so as to bind him, nor can his mere silence or failure to object be construed to be a waiver by him. Early v. State, 1 Texas Crim. App., 248; Hill v. State, 10 Texas Crim. App., 618. We think the court erred in discharging the juror McFarlane."

In the Ellison case, supra, one of the jurors became ill after eleven had been chosen and sworn; the district attorney consented for the trial judge to discharge him, but the defendant withheld his consent. The court did discharge him, and proceeded with the formation of the jury. Judge WILSON, speaks for this court, substantially as he did in the Sterling case, supra, saying: "When a juror in a capital case has been sworn, he is impaneled, and must remain upon the jury to the termination of the trial. . . . It is our conclusion, and we so hold, that, after a juror has bene once impaneled in a felony case, it is beyond the power of the court to excuse him from serving in the case, and that in case of sickness or accident rendering it impracticable to proceed with the trial of the case before the jury as then constituted the court should discharge *that* jury, and proceed to form another for the trial of the case. This precise question was before this court in the case of Hill v. State, 10 Texas Crim. App., 618, and was ably discussed by Judge HURT, and the conclusion arrived at that it was fatal error for the court, of its own motion, to discharge a juror who had been impaneled in a case." We quote from Rippey v. State, 29 Texas Crim. App., 37, which was a felony case less than capital, and the following proceedings were had, to-wit:

"2. On the first day of the trial seven men were selected as jurors, and the court was adjourned until the next morning to enable the sheriff to procure talesmen from the country. As a matter of precaution the court had the regular jury oath administered to these seven jurors who had been passed upon and selected by the parties, and they were then placed in charge of an officer. On the next morning one of these seven men was found to be so ill as to be unable to sit as a juror, and the court,

without the defendant's consent, discharged him. Defendant's counsel then moved the court to discharge the jury, that is, the other six jurors and continue the case, which motion was overruled and the jury filled out with the talesman who had been summoned. . . . . . The objection to this proceeding is that after a person has once been sworn as a juror in a case he can not be excused or discharged by the court unless the whole jury is also discharged. *This is the rule in capital cases,* it being required in such cases that as each juror is selected he shall be sworn as a juror to try the case. In other words, each juror selected is impaneled (Code Crim. Proc., art. 642; Willson's Crim. Stats., sec. 2290), and the count has no authority to excuse or discharge such juror *without the defendant's consent.* But this is not the rule where the case is a felony less than capital. In these latter cases a juror is not impaneled, that is, sworn as a juror to try the case, until the whole jury has been selected and sworn as a body. Code Crim. Proc., art. 657; Ellison v. State, 12 Texas Crim. App., 557. The fact that, as a matter of precaution, the court had had these seven men sworn as jurors to try the case did not relieve them of the necessity of again being sworn, as was done, when the entire jury had been selected; and though sworn, they were not in fact jurors in the case until the entire jury was selected and they with the others sworn in a body as a jury as provided in article 657, supra. Heskew v. State, 17 Texas Crim. App., 161."

Up to this point we have been discussing the question of the impaneling of the jury in capital cases and the discharge of such jurors generally. We will now discuss the effect of the discharge of jurors, and other proceedings upon the trial, in the absence of the defendant. We quote so much of Article 646 of Vernon's C. C. P. as will be necessary for the purpose desired, viz: "In all prosecutions for felony the defendant must be personally present on the trial, etc." It cannot be doubted that the selection of a jury is a part of the trial and a most important part, both from the standpoint of the State and the defendant. In Upchurch v. State, 36 Texas Crim. Rep., 624, we find that after the jury had been impaneled, and during the trial, about twelve or one o'clock at night a deputy sheriff went to the house of the presiding judge and reported to him that the wife of one of the jurors was very ill, and not expected to live until morning. Upon being advised that the messenger was reliable, the judge directed the deputy sheriff to excuse the juror and let him go home; neither defendant nor his counsel knew about it until the next morning when only eleven jurors appeared. After learning what occurred the night before the defendant and his counsel objected; and the court discharged the jury of his own motion, and continued the case until the next term of court. The defendant reserved his exceptions to the action of the court. On the subsequent trial defendant interposed a plea of former jeopardy. Without undertaking to quote the language, but giving only the substance thereof, the opinion refers to the fact that the action of the judge was

not in open court at all. It was at night some distance away from the courtroom, in the absence, not only of the jury, but of the prisoner and his counsel, and the court held, after an exhaustive treatment of the matter, that it was such an error on the part of the trial judge that the plea of former jeopardy would be sustained, and held that the facts as to whether the jury should have been discharged upon the former trial should have been determined at that time; and that the defendant had a right to be heard then, and not forced to wait until the next term to ascertain whether the court had erred or not. In the case of J. W. Shipp v. State, 11 Texas Crim. App., 46, the following proceedings occurred. The jury after having retired to consider their verdict returned into the court and asked for additional instructions. At this time defendant's counsel was present and excepted to the additional charge that was given, but the defendant was not present at the time and had no notice of the proceedings. This court, speaking through Judge WINKLER, upon this issue said:

"The right of the defendant to be present in court when the jury having charge of a case of felony return into court for additional instructions is clearly guaranteed to him by law. It is true that many of the rights guaranteed to a defendant by law may be waived by him. It is provided by the Code of Procedure, art. 23, that the defendant in a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury. In the case before us we are informed by the record that, though the defendant's counsel was present, the defendant was not present in court as he had a right to be under the law, as we have seen. But we are not informed by the record that the subject of a waiver of his right to be present in court when the additional charges were asked by the jury and given by the court was ever mentioned by the court or by the defendant, or by any one having authority to speak for him. We are of opinion further that the defendant's counsel, though present, was not obliged to see that the defendant was present, and that it would not be inferred from his silence that the defendant had waived his right to be present when the proceeding in question was being had against him. It was the duty of the court and the prosecuting attorney to see to it that the rights guaranteed to him by law, when his liberty is involved, were guaranteed to him on the trial, and that he is present in court when by law he is entitled to be present. The defendant's counsel could not waive for him the right to be present in court when a charge was being given to the jury; and hence the presence and silence of his counsel cannot be construed into a waiver by the defendant of his legal right to be personally present in court on so important an occasion. If it had been sought to bind the defendant by a waiver, the record should have shown in plain and unmistakable language that the defendant in person and in open court, his attention being specially directed thereto by the court or under its direction, formally waived his right to be present in court. His counsel could not in his absence make such waiver as would

be binding on the defendant. The defendant could not be bound by an implied waiver of his legal right to be personally present, even though the subject was called to the attention of the court for the first time in the motion for new trial."

In Mapes v. State, 13 Texas Crim. App., 89, it appears that by an oversight final judgment and sentence was not entered in the record and upon written notice the judgment was subsequently entered *nunc pro tunc*. The defendant was not present in person when this motion was acted upon. He was confined at the time in the jail of Bexar County. The court refused to have the defendant brought before the court, and proceeded to hear and determine the motion in his absence, to which proceedings defendant's counsel excepted and reserved his bill. After citing many authorities Judge Wilson, used this language:

"We deduce from these decisions that it is an improper practice to take any step, or have any proceeding, however trivial, formal or unimportant it may appear to be, when the defendant is not present, and that it is material error, which will render the proceeding absolutely void, where such proceeding is had during the trial of the case in the absence of the defendant. Does the *trial* embrace the final *judgment?* We think so, unquestionably. The trial has not terminated until the final judgment has been entered and the sentence pronounced. . . . We can find no authority in the law for entering any judgment in a felony case in the absence of the defendant. The defendant is guaranteed the right of appeal from the final judgment entered against him. How can he avail himself of this right unless he is present in open court when the judgment is rendered? He may have good reasons to show why the sentence of the law shall not be pronounced against him, or he might have good reason to show to the court why the judgment should not be entered against him *nunc pro tunc;* but he cannot avail himself of these legal rights when he is not allowed to be present in court."

We quote from the syllabus in Gibson v. State, 3 Texas Crim. App., 437.

"Under the Code of this State, as well as at common law, a defendant in a felony case has the right to be personally present in court when his motion for a new trial is being heard and determined; and when, as in the present case, the record affirmatively shows that the defendant's motion for a new trial was heard and determined during his absence, and that he subsequently objected thereto in the court below, the conviction will be set aside and the cause remanded for a new trial."

In Rudder v. State, 29 Texas Crim. App., 262, 15 S. W. Rep., 717, it is held:

"Code Crim. Proc. Tex., art. 701, which empowers the trial court in a criminal case to discharge the jury after they have been kept together for such a length of time as to render their agreement improbable, does not authorize the court to discharge the jury in defendant's

absence; and such a discharge may be pleaded in bar to a further prosecution, though the jury, when discharged, had deliberated for two days, and had reported to the court that they did not believe they could agree on a verdict."

In Hill v. State, 54 Texas Crim. Rep., 646, we find that:

"Upon trial for murder it was reversible error to permit the reproduction of certain testimony on request of the jury, in the absence of the defendant who was on bail; and this, although his counsel waived defendant's presence and said that they would not take any advantage of defendant's absence, and although defendant was voluntarily absent; the first section of the Act of the Thirtieth Legislature requiring his personal presence at the trial."

From the foregoing review of the authorities it appears plainly that the court cannot act upon matters in the absence of the defendant without committing error which would result in the reversal of the case on trial. In the instant case the learned judge realized that the proper practice would have been to have had the defendant brought back into the court room and the jury returned, and in open court proceed in a regular and orderly manner in the discharge of the juror Harper, but he seems to have been misled by assurances of counsel for appellant that it was not necessary to do this, as the question would never be raised. Notwithstanding this, it has been raised, and this court must hold that it was error on the part of the trial court of such a character as will necessarily result in the reversal and remanding of this case. Court was not in session at the time, the jury was not in the court-room, but in the sheriff's office when the juror Harper was notified that he might be excused; and the appellant was in jail. We cannot even presume that the action of his counsel in agreeing to the excuse of the juror was authorized by the appellant, because it affirmatively appears from the bill of exceptions that they were acting without his authority or knowledge. No action on the part of the court subsequent to the excuse of the juror in the absence of the appellant would have cured the error already committed; the appellant had a right to be present in court, where he had a right to presume that all proceedings incident to his trial would occur.

Appellant raises many questions with reference to the summoning of the venire and the action of the court incident thereto, which can hardly occur on another trial, and they are not discussed; but there are some matters presented by bills of exceptions to which, in view of another trial, we think it proper to advert. Appellant complains that the trial judge excused certain of the veniremen in the absence of, and without the knowledge of appellant. The law now permits a juror to file an affidavit presenting certain excuses, and making it unnecessary in that instance for him to appear in person; unless these affidavits are on file, the trial judge should not excuse veniremen, except in open court in the presence of the defendant, unless it might be in very rare instances.

It appears by another bill of exceptions that appellant requested the court to have all the veniremen called, and their general excuses heard in order that he might know who among the venire were left to be examined further on their *voir dire,* so that he might know how better to exercise his challenges. It hardly appears to this court to be fair either to the State or defendant to require them to go into the selection of a jury without knowing how many of the veniremen had legal excuses, in order that both sides might intelligently exercise their right of challenge. and we believe, in view of the provisions of the Code of Criminal Procedure, that the court also erred in not having granted this request. Vernon's C. C. P., Article 673: "When any capital case is called for trial, and the parties have announced ready for trial, the names of those summoned as jurors in the case shall be called at the court-house door; and such as are present shall be seated in the jury box; and such as are not present may be fined by the court a sum not exceeding fifty dollars; and, at the request of either party. an attachment may issue for any person summoned, who is not present, to have him brought forthwith before the court." Article 674 provides the form of oath to be administered to the jurors in a body. Article 675 provides: "The court shall now hear and determine the excuses offered by persons summoned for not serving as jurors, if any there be; and, if an excuse offered be considered by the court sufficient, the court shall discharge the person offering it from service." Article 686 provides: "When no challenge to the array has been made, or, having been made, has been overruled, the court shall proceed to try the qualifications of those who have been summoned, and who are present, to serve as jurors." Article 687 provides the general questions which shall be asked the jurors as to whether or not they are qualified voters, householder or freeholder, etc. Article 688 provides: "When a juror has been held to be qualified, he shall be passed to the parties, first to the State and then to the defendant, for acceptance or challenge." Then follows the various Articles giving the reasons of challenge for cause, etc.

It further appears that in impaneling the jury the court adopted the plan, not of having all the jurors sworn and tested primarily, and to render excuses, but called them in four at a time, and had the four sworn, excusing those who might have legal excuses, and then required the State and defendant to examine and pass upon those of the four who had not been excused. This was requiring both the State and defendant to act somewhat in the dark with reference to the other veniremen, and we do not believe this is the proper practice.

It appears from another bill of exceptions that a request was made by appellant to have the veniremen excluded from the courtroom during their examination on their *voir dire,* and have them called in one at a time for this purpose, and also requested that the jurors, after selection, should be retired from the courtroom in charge of an officer. This, to a large extent, must be left to the discretion of the trial judge.

depending upon the convenience of the arrangement of the courtroom and the other facilities for conducting the trial and selection of juries. In Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. Rep., 742, where a similar request to have the veniremen excluded from the courtroom during examinations was made, this court said. "While it would not be such error as to require reversal of a case, in the absence of injury shown, for the court on motion to refuse to exclude the veniremen from the courtroom during the selection of a jury, yet where an application is made, claiming that the examination which should be made would prejudice her defense and rights, it should be granted, and in an extreme case we would feel called on to reverse a case if it was shown that application had been made, and by the refusal of the court to do so the defendant was prevented from asking proper questions for fear of prejudicing the jury, or in asking them might create a prejudice in the minds of the veniremen by reason of such examination, or that such a member would and did disqualify by reason of having a previously formed opinion as might prejudice defendant's rights." The writer, after many years' experience as a trial judge reached the conclusion that it was much more satisfactory, after the preliminary examination, not only to have the veniremen excluded from the courtroom and have them come in one at a time for examination, but also for the jurors, as they were selected, to retire from the courtroom in company with an officer. Unguarded expressions from veniremen upon their examination, because of their unfamiliarity with court proceedings, frequently inject embarrassing answers which might work to the harm of either the State or defendant; this situation can be easily avoided by following the course requested by the appellant in this case, and it is much easier to save questions from arising than to speculate upon their effect after they have arisen.

We find no error on the part of the trial court in excluding the judgment of divorce between deceased and her first husband, nor of the certificate of death of F. E. Parker's first wife. We are unable to discover the relevancy of such testimony.

Appellant offered testimony that Miss Polan, a witness, and the deceased, on more than one occasion engaged in carnal intercourse with various men. We do not think such evidence admissible. In so far as the witness, Miss Polan, is concerned, it would be an effort to imsible for any other purpose. It was offered as to deceased on the peach her in a way not permitted by the law, and would be inadmistheory that it would tend to shed light on her probable state of mind, and the likelihood of a desire to take her own life. We fail to see that such testimony is pertinent to that issue.

Appellant also offered to prove that deceased indulged to some extent in the use of intoxicating liquor. The State alleged that deceased was killed by poison administered in brandy. Appellant claims that she phoned him making an engagement, and requested him to bring something to drink. Under the allegations in the indictment, and the

contention of appellant, we think the offered testimony should have been admitted as to the use by deceased of intoxicating liquor.

In bill of exceptions Number 44, appellant complains of the action of the trial court in excluding the testimony of H. C. Spear to the effect, that upon a pleasure trip in company with deceased and other parties, they had a camp supper, and while they were around the camp fire deceased suddenly became despondent and withdrew from the circle of friends about the fire, and that she and the witness had a conversation in which she expressed to him her great feeling of despondency and dissatisfaction with life in general, and stated that she did not care to live. The court approved the bill of exceptions with this qualification: "This bill is allowed with this qualification: That if the direct question had been asked this witness as to what, if anything, Ora Parker had said to him as to her depressed or morbid condition of mind this court would have permitted him to state what she said." It appears also in this bill that appellant also expected to prove by the witness that upon this occasion all parties drank intoxicating liquor, and the court had consistently excluded all testimony of this character.

It appears from nearly all the bills of exceptions that the court adopted the plan of not taking the time to have the jury withdrawn, and develop from the witnesses what the probable testimony would be in order for the appellant to take his proper exceptions if the testimony was excluded, but agreed with counsel for appellant that he might put into the bill such matters as he expected to prove by the witness, and we surmise it was because of this practice that the error in excluding the evidence of this particular witness occurred. Of course, upon another trial, this testimony as to expressions of despondency of deceased, should be admitted.

In his forty-fifth bill of exceptions appellant complains of the action of the court in excluding the testimony of Dr. Ross. It appears from this bill that the witness said he would prefer not to give this testimony in regard to the matter he was being interrogated about, but the bill is silent as to whether he put it on the ground of a privileged communication to him as a physician or not. If the court declined to require him to answer because of this reason he was in error; in the absence of a statutory enactment in this State making communications between physicians and their patients privileged, they can not claim this right. See Steagald v. State, 22 Texas Crim. App., 464. The bill further recites that if permitted and compelled to testify the witness Dr. Ross would have stated he was a specialist in venereal diseases and had treated deceased for syphilis; he had diagnosed her case as syphilis and had pronounced her case incurable, and this had taken place about four o'clock in the afternoon of January 23, 1920. The bill does not recite that he "pronounced" to the deceased the nature of her disease, or that he in any way communicated this information to her. We are of the opinion, if it should develop upon another trial

that this witness advised the deceased that she was afflicted with syphilis, this testimony should be admitted; and if the Doctor informed her it was practically incurable it would also be a pertinent matter for the consideration of the jury, together with her statement. if any, with reference to the matter at the time.   If she had an incurable disease, and had knowledge of it, it would be a circumstance on the issue of suicide.   It is generally known by the public that syphilis is a loathsome, and practically regarded as an incurable, disease, and we believe this evidence should go to the jury for their consideration upon the appellant's claim that the death of deceased was not caused by his agency, but was brought about by the deceased herself.

We do not discuss the assignments of error presented by appellant's complaint of argument of counsel and misconduct of the jury because they will not likely occur on another trial.

For the errors pointed out above, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*