

# THE ATTORNEY GENERAL

# OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

September 5, 1972

Hon. M. H. Crabb, Secretary
Texas State Board of Medical
   Examiners
1612 Summit Avenue, Suite 303
Fort Worth, Texas 76102

Opinion No. M-1208

Re: Validity and constitu-
    tionality of Article 4505,
    Paragraph 4, Subpart (C),
    V.C.S., prohibiting the
    writing of prescriptions
    for or dispensing to a
    person known to be an
    habitual user of narcotic
    or dangerous drugs, etc.

Dear Dr. Crabb:

        In your recent opinion request you asked whether
Article 4505, Section 4(C), of the Texas Medical Practice Act
conflicts with any other state law, federal law or regulation,
or abridges any rights provided for in the Texas or United
States Constitutions.

        Article 4505, Vernon's Civil Statutes, as amended
in 1971, lists the reasons the State Board of Medical Examiners
may refuse to admit persons to its examinations and may refuse
to issue a license to practice medicine.  Section 4(C) of Article
4505 states:

        "Writing prescriptions for or dispensing
        to a person known to be an habitual user of narcotic
        drugs or dangerous drugs, or to a person who the
        doctor should have known was an habitual user of
        narcotic or dangerous drugs.  This provision shall
        not apply to those persons being treated by the
        physician for their narcotic use after the physician
        notifies the Texas State Board of Medical Examiners
        in writing of the name and address of such person
        being so treated."

        Under Article 4506, a physician's license may be re-
voked for any of the reasons stated in Article 4505.

        The Uniform Narcotic Drug Act, which is Article 725b of
the Texas Penal Code, states:

"(14) 'Narcotic drugs' means coca leaves, opium, cannabis, amidone, isonipecaine and every substance neither chemically nor physically distinguishable from them; also opiates, which shall mean any drug having an addiction-forming or addiction-sustaining liability similar to opium or cocaine; substances which are now listed in, or may be added subsequently to, Schedule II, Title II, Part B, Section 202, under the provisions of the Comprehensive Drug Abuse and Prevention and Control Act of 1970."

Under Section 9(1)[1] of this Act, physicians must keep records of narcotic drugs received, administered, dispensed or professionally used by them. The form for these records is expressly set out in Section 9(5)[2] of Article 725b, and requires that for all narcotic drugs sold, administered, dispensed or otherwise disposed of, the physician must show the date of the selling, administering or dispensing as well as the name and address of the person to whom or for whose use the drugs were sold, administered

---

[1]Art. 725b, Texas Penal Code. Section 9. (1) Physicians, Dentists, Veterinarians, and other Authorized Persons. Every physician, dentist, veterinarian, or other person who is authorized to administer or professionally use narcotic drugs, shall keep a record of such drugs received by him, and a record of all such drugs administered, dispensed, or professionally used by him otherwise than by prescription. It shall, however, be deemed a sufficient compliance with this Subsection if any such person using small quantities of solutions or other preparations of such drugs for local application, shall keep a record of the quantity, character, and potency of such solutions or other preparations, purchased or made up by him, and of the dates when purchased or made up by him, without keeping a record of the amount of such solution or other preparation applied by him to individual patients. . . .

[2]Art. 725b, Texas Penal Code. Section 9. (5) Form and Preservation of Records. The record of narcotic drugs received shall in

or dispensed and the kind and quantity of drugs.  The Federal Narcotic Laws require substantially the same information as specified in Article 725b, Texas Penal Code, and in Article 4505, Section 4(B), Vernon's Civil Statutes, of the Texas Medical Practice Act.  Section 19[3] of Article 725b, Texas Penal Code, further provides that the prescriptions, orders and records which are required by the Act are to be open to inspection only by Federal, State, county and municipal officers who have a duty to enforce the laws relating to narcotic drugs.

---

every case show the date of receipt, the name and address of the person from whom received, and the kind and quantity of drugs received; the kind and quantity of narcotic drugs produced or removed from process of manufacture, and the date of such production or removal from process of manufacture; and the record shall in every case show the proportion of morphine, cocaine, or ecgonine contained in or producible from crude opium or coca leaves received or produced, and the proportion of resin contained in or producible from the plant Cannabis Sativa L.  The record of all narcotic drugs sold, administered, dispensed, or otherwise disposed of, shall show the date of selling, administering, or dispensing, the name and address of the person to whom, or for whose use, or the owner and species of animal for which the drugs were sold, administered, or dispensed, and the kind and quantity of drugs.  Every such record shall be kept for a period of two (2) years from the date of the transaction recorded.  The keeping of a record required by or under the Federal Narcotic Laws containing substantially the same information as is specified above, shall constitute compliance with this Section, except that every such record shall contain a detailed list of narcotic drugs lost, destroyed, or stolen, if any, the kind and quantity of such drugs, and the date of the discovery of such loss, destruction, or theft.

[3]Art. 725b, Texas Penal Code.  Section 19.  Prescriptions, orders, and records, required by this Act, and stocks of narcotic drugs, shall be open for inspection only to Federal, State, county, and municipal officers, whose duty it is to enforce the laws of this State or of the United States relating to narcotic drugs.  No

        The term "public office" is defined as "the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.  The individual so invested is a public officer."  47 Tex.Jur.2d 10, Public Officers, Sec. 1; Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900); Aldine Indep. Sch. Dist. v. Standley, 154 Tex. 547, 280 S.W.2d 578 (1955); Knox, et al. v. Johnson, 141 S.W.2d 698 (Tex.Civ.App. 1940, error ref.); Northwestern Natl. Life Ins. Co. v. Black, 383 S.W.2d 806 (Tex.Civ.App. 1964, error ref. n.r.e.); Hendricks v. State, 49 S.W. 705 (Tex.Civ.App. 1899, no writ).  The members of the State Board of Medical Examiners are included among State officers.

        Article 726d, Vernon's Penal Code, sets out the State's law on dangerous drugs.  It is the intent of the Legislature under this Act to regulate and control the handling, sale and distribution of dangerous drugs as defined in the Act in order to:

        ". . . insure that the public shall receive the therapeutic benefits of 'dangerous drugs' under medical supervision to the full extent required to assure safety and efficiency in their use; to complement and supplement the Laws and Regulations of the Congress of the United States and the appropriate agencies of the Federal Government affecting such handling, sale, and distribution; to prevent such handling, sale or distribution for harmful or

---

officer having knowledge by virtue of his office of any such prescription, order, or record shall divulge such knowledge, except in connection with a prosecution or proceeding in Court or before a licensing or registration board or officer, to which prosecution or proceeding the person to whom such prescriptions, orders, or records relate is a party.

illegitimate purposes; and <u>to place upon</u> manufacturers,
wholesalers, licensed compounders of prescriptions,
and <u>persons prescribing such drugs, a basic re-
sponsibility for preventing the improper distribution</u>
of such drugs to the extent that such drugs are pro-
duced, handled, sold, or prescribed by them."
(Emphasis added.)

A dangerous drug is defined under the Act as "any drug
or device unsafe for self-medication," with certain exceptions
relating to drugs in the treatment of animals or poultry.  This
definition is quite broad and includes antibiotics as well as
hallucinogens, amphetamines, tranquilizers and synthetic narcotic
drugs.  Physicians again are required to keep records under this
Act and must keep records and report the information required
under Article 4505, Sections 4(B) and 4(C), Vernon's Civil Statutes.

A third area involving narcotics and dangerous drugs is
that dealing specifically with synthetic narcotics.  Article 725e,
Sections 1 and 2, Vernon's Penal Code[4], require a permit from

---

[4]Art. 725e, Texas Penal Code.  Section 1.  One hundred twenty days
after the effective date of this Act it shall be unlawful to pre-
scribe or administer synthetic narcotic drugs to any person for
the purpose of treating drug dependency without a permit issued
by the Texas State Department of Health.

Section 2. (a) The Texas State Department of Health, hereinafter
designated as "the department," shall establish, administer, and
enforce such rules, regulations, and standards as it deems neces-
sary to insure the proper use of synthetic narcotic drugs in the
treatment of drug-dependent persons.  To advise the department in
the establishment, administration, and enforcement of such rules,
regulations, and standards, an advisory committee shall be ap-
pointed.  . . .

the Texas State Department of Health before a physician may pre-scribe or administer synthetic narcotics for the purpose of treat-ing drug dependency.  This section also gives the Department the authority to establish, administer and enforce any rules, regula-tions, and standards necessary to insure the proper use of synthetic narcotics in the treatment of drug dependent persons.

From the foregoing, it is our conclusion that physicians must comply with the reporting provisions of Article 4505, Section 4(C), when they are prescribing or dispensing narcotic or dangerous drugs (including synthetic narcotic drugs) to one known or one who the doctor should have known was an habitual user of narcotic or dangerous drugs.  To the extent Article 725e, Section 2, Vernon's Penal Code, gives the Texas State Department of Public Health the authority to establish rules, regulations, and standards as to the use of synthetic narcotic drugs in treating drug dependency, the physicians must also report the names and addresses of those who receive treatment under this program to the State Department of Health as well as to the State Board of Medical Examiners.

Article 4505, Section 4(C), is not in conflict with the United States or Texas Constitutions.  The physician/patient privi-leged communication is not a constitutional right and it was not recognized as a right or privilege at common law.  It is merely a statutory privilege in those states whose legislatures have con-ferred the privilege.  McCormick & Ray, Evidence, Section 491, page 412-414.  Texas does not recognize that privilege.  Steagald v. State, 22 Tex. 464, 3 S.W. 771 (1886); Dodd v. State, 83 Tex. Crim. 160, 201 S.W. 1014 (1918); Crow v. State, 89 Tex.Crim. 149, 230 S.W. 148 (1921); Consolidated Underwriters v. Foxworth, 196 S.W.2d 87 (Tex.Civ.App. 1946); Bonewald v. State, 157 Tex.Crim. 521, 251 S.W.2d 255 (1952); Caddo Grocery & Ice Co. v. Carpenter, 285 S.W.2d 470 (Tex.Civ.App. 1955); Tex. Employer's Ins. Assn. v. Marshall, 436 S.W.2d 619 (Tex.Civ.App. 1969).

According to Mr. Oliver Fields, legal counsel for the American Medical Association, and a Mrs. Anderson of the AMA legal staff, Texas is following the nationwide trend in that the majority of the states do have some type of reporting requirement, and Texas' provisions are almost identical to the language recommended by the AMA for adoption in the Uniform Drug Act.

In summary, we do not find any conflict between the Texas and United States Constitutions, and we do not find any conflict in the federal and state regulations.  In fact, the Texas statutes have been enacted pursuant to federal legislation.  (See Public

Law 91-513, the Federal Comprehensive Drug Abuse Prevention Control Act of 1970.)  We have noted the control of the State Health Department over all phases of synthetic narcotic drugs and that physicians must report the names and addresses of those who are treated with synthetic narcotic drugs in drug dependency programs both to the State Board of Medical Examiners and to the State Health Department.

## S U M M A R Y

Article 4505, Section 4(C), Vernon's Civil Statutes, does not violate any United States or Texas constitutional provisions, nor do we find that it violates any federal law or regulation or any other State law or regulation.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Linda Neeley
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
John Reeves
Van Thompson, Jr.
Howard Fender
Sig Aronson

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant