WILL BLACKWELL v. THE STATE.

*No. 3441.    Decided November 12.*

1. Practice — Change of Venue.—Article 584 of the Code of Criminal Procedure enacts that an order granting or refusing a change of venue shall not be revised on appeal unless the facts whereon the order was based are brought up by bill of exceptions perfected at the term whereat the order was made. The rule of practice thus prescribed limits this court, in considering an order on a motion for change of venue, to the facts stated in the bill of exceptions, and excludes from consideration evidence on such issue if contained in even a legal general statement of facts.

2. Same— Continuance— New Trial.—The defendant sought a continuance because of the absence of several witnesses, all but two of whom are shown by the judge's certificate to the bill of exceptions to have been present at the trial. The purpose of

the testimony of the two absent witnesses, as shown by the application, was to meet anticipated inculpatory testimony, but it appears from the record and the judge's certificate that such anticipated testimony was not introduced by the State. *Held,* that continuance in the first instance and new trial in the second were properly refused.

3. Same — Jury Law — Challenge.—The defendant complains on appeal that he was compelled to exhaust one of his peremptory challenges in order to exclude a certain proposed juror from the panel. It appears, however, that the court accorded him another challenge in lieu of the one thus used. *Held,* that if the court erred in the first instance, the error was cured by its subsequent action. Moreover, no objectionable juror was forced upon the defendant, and hence he would in no event be heard to complain.

4. Same — Evidence.—When the *scienter* or *quo animo* is a constituent of an offense and necessary to be proved, it is competent to introduce testimony of acts, conduct, or declarations of the accused which tend to establish the knowledge or intent, though they in themselves constitute in law distinct crimes, and are apparently collateral and foreign to the main issue, and may have occurred either prior or subsequent to the act for which the accused is being tried. See the opinion for evidence *held,* under this rule, to have been properly admitted on this trial.

5. Same — Murder — Manslaughter — Charge of the Court.—See the statement of the case for evidence *held* to distinctly present the issue of murder in the first degree, and to require a charge of the court submitting that issue. Adequate cause is an essential element of manslaughter, and no part of the proof suggesting adequate cause the court did not err in omitting to instruct upon manslaughter. Note further that the evidence is ample to support a capital conviction for murder.

6. Same.—Special instructions are properly refused when the general charge correctly and sufficiently presents and controls the issue upon which they were requested.

7. Same—"The Rule."—Whether or not a witness who was not placed under "the rule" after it was invoked, or who violated it, will be permitted to testify is a matter confided to the sound discretion of the trial court, and such discretion will be presumed to have been correctly exercised until the contrary is shown. Such showing was not made in this case.

8. Same — New Trial — Newly Discovered Evidence.— See the opinion for evidence set out in a motion for new trial as newly discovered, *held* not to come within the category of "newly discovered" evidence. Moreover, the motion for new trial fails to show that "it was not owing to a want of diligence on the part of defendant that the evidence was not discovered sooner," and it is not probable that the evidence if adduced on another trial would produce a different result.

APPEAL from the District Court of Gonzales. Tried below before Hon. George McCormick.

This conviction was in the first degree for the murder of Lump Rainey, in Gonzales County, Texas, on the 12th day of July, 1890. The death penalty was assessed.

The evidence in this case was purely circumstantial, but it is not essential to this report that it be summarized in detail.

The killing occurred in a pasture in which were situated three houses, that of William Hunter, standing about midway between the east and west boundaries of the pasture, being the most westerly house of the three. The "Rainey" house stood on a line with and about 100 yards east of the Hunter house. East of the "Rainey" house stood a vacant house. Denton Creek enters the pasture at the northwest corner, follows the north

boundary of the pasture to a point about opposite Hunter's house at. White Oak crossing, whence it flows southeastwardly to a point east of the vacant house, and thence south.  At the time of the killing the "Rainey" house was occupied by John Rainey, Gus Jones, Joe Ford, the deceased, and the defendant.  The "Rainey" house consisted of a front room and a shed room.  The cooking stove stood in the southwest corner of the shed room.  The trunk of the Rainey boys, containing their clothing and other property, including two watches, fifteen cents in silver, and $5 in currency, stood in the south corner of the front room, and near it was a five gallon can of gasoline oil.  The killing occurred between 8 and 9 on the morning of Saturday, July 12, 1890.

John Rainey testified for the State, in substance, that he and Gus. Jones, Jack Kent, and the defendant were the only parties who spent the whole of Friday night at home — the "Rainey" house.  The deceased went to a party on that night, but got back before day.  A cold breakfast was eaten by the party on Saturday morning, and no fire was lighted in the stove.  About 8 o'clock on that morning the witness, Gus Jones, and Joe Ford went to the creek to muddy a water hole in which they proposed to fish.  They left the defendant and the deceased at the house. Witness and Ford undressed and went into the water hole, but Jones did not.  After awhile the deceased, riding his horse, came to the water hole, and soon he and Jones rode off to hunt horses in the pasture.  Witness. and Ford then left the water hole, went to the bank, and proceeded to dress.  Within about eight minutes the witness heard a shot, followed a. few seconds later by another shot.  Within a short time — but few minutes — the defendant, on the Rainey sorrel stallion, rode full speed down the hill and across the creek.  He crossed the creek about twenty steps. from where witness and Ford were dressing.  The witness did not observe anything in the defendant's hands.  A few minutes after the defendant. crossed the creek Gus Jones rode up and reported to witness and Ford that witness's brother Lump, the deceased, had been shot and killed. Witness, not fully dressed, rode at once to the body near the west fence of the pasture and found his brother gasping his last breath.  Thence he rode rapidly to his house, which he found burning and nearly consumed. Thence he rode back to the body and saw deceased's hat and a bundle containing three pairs of pantaloons, a coat, a vest, some socks, and cuff buttons lying near the body.  When the witness left home that morning those articles were locked in the trunk, and the witness had the trunk key in his pocket.  Kent left the house and Ford came to it before 8 o'clock on that morning.  This witness was positive that no fire was. lighted in the house on that morning.  Neither the deceased nor Jones. were armed when they left the water hole a few minutes before the shooting.  Three pistols were kept in the house.  One of them was the pistol.

in evidence, and it belonged to the defendant. The other two belonged respectively to Gus Jones and Earl Bright. ·

Joe Ford corroborated John Rainey circumstantially, adding that when the defendant rode across the creek just after the shooting he had a pistol in his right hand. The Rainey house was about burned down when the witness reached it. Mr. and Mrs. Hunter were then there. The witness followed the track of the Rainey sorrel stallion from the place where defendant, riding him, crossed the creek, down the creek in a southeasterly direction until it crossed the creek again; thence through the lot at the old Mooney place, and thence west out at the Mooney field gate. That was not the route to Gonzales.

Gus Jones testified for the State substantially as did John Rainey and Ford up to the time he and deceased left John Rainey and Ford at the water hole. Continuing from this point, he said that soon after they left the water hole he and the deceased separated, he going east and deceased west in the pasture to hunt for horses. They had been separated but a few minutes when witness heard the first shot. He at once started at full speed to the place whence the shot sounded to have been fired, and had gone but a short distance when he heard the second shot. When he reached a point about 175 yards of where he afterwards found the body, he saw the defendant on the Rainey sorrel stallion, with a pistol in his right hand, running full speed away from the vicinity of the body and toward the water hole where John Rainey and Ford were. Witness then rode up to the body, near which he saw a bundle of clothes. Those clothes belonged to John Rainey and the deceased, and were in the trunk that morning when John Rainey locked it. From the body witness rode to the Rainey house, which he found burning; reported the killing to Mr. and Mrs. Hunter, whom he found there, and thence he rode to the water hole and made the same report to John Rainey and Ford. The witness's pistol was burned with the house, the metal parts being found afterwards.

William Hunter testified, in substance, that between 8 and 9 o'clock on the fatal morning he saw defendant catch the Rainey sorrel stallion, at which time defendant said that he was going to John Mooney's, about fifteen miles distant. Soon after that he saw the Rainey stallion hitched near the Rainey house and some person moving about in the front part of the said house. A short while afterwards the witness, from his hog pen, saw a dense smoke ascending from the front room of the Rainey house. Followed by his wife, he ran to the said house, calling "fire! fire!" There was no fire in the shed room when witness reached the house, but it was raging furiously in a corner of the front room, in which afterwards, among the debris, the witness found the remains of a trunk, a gasoline oil can, two pistols, two watches, fifteen cents in silver, a cold chisel and a pair of pincers. Soon after witness reached the burning house Gus Jones rode up and reported the killing of the deceased.

Other testimony for the State located the defendant on the fatal day at different times at different places, riding the Rainey sorrel stallion. He was finally captured on the same day, in the brush, having in his possession a mare that belonged to Jesse Broadnax. The sorrel stallion, ridden down, was standing near.

Ford, Jones, and John Rainey, all witnesses for the State, testified positively that no fire was lighted in the stove in the shed room on the fatal morning. It was shown by other testimony that a ball taken from the head of the deceased fitted the defendant's pistol to a nicety.

The defendant and his witness Walker testified that a fire was made in the stove in the shed room on the fatal morning, and a pot of coffee boiled thereon. Further testifying in his own behalf, the defendant said that soon after the deceased left the house, which was some time after John Rainey, Jones, and Ford left it, he caught the sorrel stallion for the purpose of getting up his mare on which to go to Mr. John Mooney's place. He rode the stallion hard until late that evening in his search for his mare. Failing to find his own animal, he caught and saddled the mare afterwards claimed by Broadnax, his purpose being to get to Mooney's that evening. He was waiting in the brush for dark, to avoid apprehension with the mare in possession, when he was arrested. He did not fire the Rainey house nor kill the deceased, and knew nothing about either the burning of the house or the killing until after his arrest.

No brief for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This appeal is from a judgment of conviction for murder of the first degree in which the penalty of death has been assessed.

A motion was made by the defendant for a change of venue, based upon both of the statutory grounds mentioned in article 578 of the Code of Criminal Procedure, supported by the affidavits of two compurgators. It was controverted by the State. Evidence was heard pro and con by the court; the motion was overruled, and defendant reserved his bill of exceptions to the ruling. This bill of exceptions was approved by the trial judge and filed in court within ten days after trial, on the 30th day of July, 1890, the day upon which the term of court finally adjourned. But it does not contain the facts adduced in evidence on the hearing of said motion. It is provided by article 584 of the Code of Criminal Procedure, that "the order of the judge granting or refusing a change of venue shall not be revised upon appeal unless the facts upon which the same was based are presented in a bill of exceptions, prepared, signed, approved, and filed at the term of the court at which such order was made."

Under this rule the facts should have been embodied in and brought up by the bill of exceptions. Bowden v. The State, 12 Texas Ct. App., 246. There is in the record what purports to be a statement of facts containing the evidence adduced on this motion for change of venue, but the date of its approval by the judge is not given, and it was not filed until the 11th day of August, 1890, which was on the twelfth day after the date of the adjournment of the term, viz., after the 30th of July, 1890. Conceding then that the general rule allowing the statement of facts to be made up and filed in vacation at any time not exceeding ten days after the adjournment of the term (Rev. Stats., art. 1379; Willson's Crim. Stats., sec. 2564) applicable to evidence heard on change of venue, this statement would be entitled to no consideration, because not filed within the ten days. We are, however, of opinion that the statute allowing the ten days after adjournment to file a statement of facts can have no applicability to the statement of facts on a motion for change of venue. These facts should be embodied in a bill of exceptions, which bill should "be prepared, signed, approved, and filed at the term of the court at which such order was made." Code Crim. Proc., art. 584, *supra.* We have, however, read the statement of facts in connection with said motion, and if we were permitted to consider it we should hold that the court did not err in overruling the motion to change the venue of the case. Code Crim. Proc.; art. 583; Willson's Crim. Stats., sec. 2210.

2. No error is made to appear in the refusal of the court to grant defendant's application for a continuance. The explanation of the learned trial judge appended to the bill of exceptions is entirely satisfactory as to the correctness of his ruling. Nor could the proposed absent testimony have had any weight in determining the motion for a new trial, there being no evidence adduced to which it would be applicable, even if admissible.

3. Appellant exhausted a peremptory challenge upon Orchard, one of the veniremen whom he had ineffectually endeavored to challenge for cause. But the court gave him another peremptory challenge in lieu of the one thus used, and he in fact thus used twenty-one peremptory challenges, or one more than the law allows him. Code Crim. Proc., art. 635. This fully cured the erroneous ruling, if any such there was; and even if that were not so, he had no objectionable juror forced upon him and consequently has no ground for complaint. Willson's Crim. Stats., sec. 2293; Hudson v. The State, 28 Texas Ct. App., 323.

4. A bill of exceptions was saved to the admission over defendant's objection of evidence going to show that the house occupied by the parties to the homicide and other young men had been set fire to and was consumed about the time of the killing. The theory of the State was that defendant had stolen clothing and other articles which were in the house belonging to the young white men, and that to conceal his crime he set

fire to the house and was making his escape with the plunder when he was met by deceased, whom he killed in order to escape the consequences of his theft and arson. The case was one of circumstantial evidence, and the testimony was admissible as *res gestæ;* it tended to throw light upon the transaction, the motive of the slayer, and the reasons which prompted the killing. Willson's Crim. Stats., secs. 1044, 1046, 2493, 2498.

"When the *scienter* or *quo animo* is a constituent of an offense and necessary to be proved, it is competent to introduce testimony of acts, conduct, or declarations of the accused which tend to establish the knowledge or intent, though they in themselves constitute in law distinct crimes, and are apparently collateral and foreign to the main issue and may have occurred either prior or subsequent to the act for which the accused is being tried." McKinney v. The State, 8 Texas Ct. App., 626; Leeper and Powell v. The State, *ante*, p. 63.

Defendant asked special requested instructions relative to the evidence as to the burning of the house and theft of the clothing, which instructions were refused by the court. As far as was necessary the court in the general charge had already limited and restricted the purposes for which this testimony had been permitted to be introduced, and sufficiently and properly guarded its consideration by the jury, and it was not error to refuse the special instructions.

5. Several objections and exceptions were taken to the charge of the court. One was that the court submitted murder of the first degree, and one that the court erred in not submitting manslaughter. The facts in evidence not only raised but required the charge upon murder of the first degree, and those facts, as they appear in this record, in our opinion, fully warranted the jury in returning a verdict for murder of the first degree. As to manslaughter, there is not a scintilla of evidence going to suggest even "adequate cause," and without "adequate cause" there could be no manslaughter. Clore v. The State, 26 Texas Ct. App., 624; Willson's Crim. Stats., sec. 1018.

6. When the State introduced the witness Duren the defendant objected because "the rule" had been invoked and this witness had not been placed under "the rule." It was shown that the witness had not been in the court room during the trial, and had heard nothing with regard to the testimony of the other witnesses. The admissibility of witnesses who have violated "the rule," or who have not been placed under the rule, is within the sound discretion of the court, and such discretion will be presumed to have been correctly exercised until the contrary appears. Sherwood v. The State, 42 Texas, 498; Willson's Crim. Stats., sec. 2318. No abuse of discretion is shown in this instance.

7. One of the grounds of defendant's motion for a new trial was the newly discovered evidence of one Jack Kent. Defendant can not legitimately claim that the evidence of this witness was newly discovered. He

proposed to prove by this witness that said witness was at the house on the morning before the killing, and that a fire had been made in the stove in said house before breakfast. Defendant, if it were a fact, certainly must have known and did know that Kent was there and could testify to this fact, and if he desired his testimony he should have taken the steps necessary to secure his attendance on the trial. Besides this, his own witness Walker testified that there was a fire in the stove that morning, and defendant, testifying in the case, swore to the same fact. Kent's testimony, therefore, if newly discovered, would be only cumulative of theirs. But, as before stated, the evidence does not and can not come within the category of "newly discovered." Defendant has at all events failed to show that "it was not owing to a want of diligence on his part that it was not discovered sooner," which is one of the essentials to such evidence, and in our opinion the evidence if produced on another trial would not "probably produce a different result." Willson's Crim. Stats., sec. 2544; Code Crim. Proc., art. 777, subdiv. 6.

In discussing and determining the questions raised in this case we have given the defendant the benefit of a due consideration of the statement of the facts as we have found it incorporated in the record. This he was not entitled to. Ten days were allowed by order of the court for the making up and filing of the statement after adjournment of court. Court adjourned on the 30th day of July. The statement of facts, though approved and signed by the judge on the 9th day of August, was not filed in court until the 11th, and the want of diligence is not attempted to be explained.

As above stated, however, we have read and considered this statement because approved before the expiration of the ten days, and on account of the gravity of the punishment denounced by the verdict and judgment. There is nothing in the statement of facts which tends in the slightest to mitigate or palliate the crime for which defendant has been indicted, fairly and impartially tried, and justly convicted by the verdict of the jury and the judgment of the lower court. It only remains for us to declare that we have found no reversible error in the record of his conviction, and that the judgment is in all things affirmed.

*Affirmed.*

Hurt, J., absent.