Mildred Opal BATTEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 50945.

Court of Criminal Appeals of Texas.

Feb. 25, 1976.

789

OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for capital murder [V.T.C.A. Penal Code, Sec. 19.03(a)(3)], wherein the jury assessed the punishment at life imprisonment.

The appellant was charged with hiring one James Bates to murder her husband, George Batten.

■ At the outset, we are confronted with the most serious question in the case— that the trial court erred in denying the appellant fifteen peremptory challenges to which she was entitled in a capital case under Article 35.15(a), Vernon's Ann.C.C.P., as amended.

The record reflects that the alleged offense occurred on June 29, 1974, the indictment was presented on July 17, 1974, and the trial commenced on September 16, 1974.

Both parties assert that the trial court took the position that since the State had not filed written notice it would seek the death penalty such penalty was no longer in the case [1] and limited the number of peremptory challenges for the appellant to ten, which is the proper number for non-capital cases. He further refused a written request by the appellant to examine the jurors separate and apart (Article 35.17, Vernon's Ann.C.C.P., as amended) and instructed the jury at the voir dire examination that the only penalty was life imprisonment if the appellant was found guilty of capital murder. After the jury found the appellant guilty of capital murder, the court at the penalty stage of the trial did not submit the questions required by Article 37.071, Vernon's Ann.C.C.P., but simply instructed the jury that the "punishment authorized for this offense is confinement in the State Penitentiary for life." The jury in its verdict assessed life imprisonment.

Milton E. Douglass, Jr., Wichita Falls, for appellant.

Timothy D. Eyssen, Dist. Atty., and Roger E. Towery, Asst. Dist. Atty., Wichita Falls, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

1. Although both parties assert that it was the trial judge who took this position, it is not clear from the record just what resulted in the State's waiver of the death penalty. We do find several references by the trial judge to the fact that the State had waived the death penalty, but the reasons for such waiver are not clearly reflected in the appellate record.

The parties agree that the trial court in limiting the number of peremptory challenges apparently relied upon the provisions of Article 1.14, Vernon's Ann.C.C.P., 1965, as amended 1967,[2] and the decisional law thereunder[3] that where the State fails to give written notice it will seek the death penalty such penalty is waived, although the nature of the offense is not changed and certain procedural requirements relative to capital cases need not be met.

However, said Article 1.14 was amended in 1973 to simply read:

"The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case." (Acts 1973, 63rd Leg., p. 1127, ch. 426, Art. 3, Sec. 5, effective June 14, 1973)[4]

This amendment was a part of the statutory scheme adopted for the trial of capital murder cases following the decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

In the same bill Article 35.15(b), Vernon's Ann.C.C.P., 1965, was amended. It had provided that in non-capital cases "and in capital cases where the State has made known to the court that it will not seek the death penalty" each party was entitled to ten peremptory challenges. The 1973 amendment eliminated the phrase in quotes, but it did not affect Subsection (a) of the statute which provided for fifteen peremptory challenges for each party "[i]n capital cases." At the same time Article 35.17, Vernon's Ann.C.C.P. (voir dire examination), was amended. Section 1 thereof was rewritten, and the references to "capital case in which the state's attorney has made known that he will not seek the death penalty" was deleted. In Section 2 thereof the phrase "when the state's attorney has made known he will seek the death penalty" was replaced with the phrase "In a capital felony case . . . ." The amendments to Articles 1.14, 35.15 and 35.17, supra, clearly removed any requirement that the State give written notice of its intention to seek the death penalty and clarified the number of peremptory challenges available in view of such amendment. These amendments became effective June 14, 1973, prior to this 1974 offense and trial, and must be considered in light of the provisions of the statutory scheme relating to criminal homicide, including the classification of felonies into categories, including capital felonies (V.T.C.A. Penal Code, Sec. 12.04), the provisions for punishment for a capital felony (life or death, V.T.C.A. Penal Code, Sec. 12.31), as well as the provisions of V.T.C.A. Penal Code, Sec. 19.03, defining capital murder, which Section on January 1, 1974, superseded Article 1257, Vernon's Ann.P.C., as amended in 1973.

In light of the foregoing, it is clear that the trial court was in error in holding that the State had waived the death penalty and in limiting the number of peremptory challenges, but we must determine if such error was reversible error.

It is observed that the appellant properly objected to the refusal of the court to per-

2. The 1967 version of Article 1.14, supra, reads as follows:

"The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case in which the State has made known in open court in writing at least 15 days prior to trial that it will seek the death penalty. No case in which the State seeks the death penalty shall be tried until 15 days after such notice is given. When the State makes known to the court in writing in open court that it will not seek the death penalty in a capital case, the de-

fendant may enter a plea of guilty, nolo contendere, or not guilty before the court and waive trial by jury as provided in Article 1.13, and in such case under no circumstances may the death penalty be imposed."

3. See, e. g., *Smith v. State,* 455 S.W.2d 748 (Tex.Cr.App.1970).

4. This 1973 amendment caused the statute to read just as its predecessor under the former Code of Criminal Procedure had read. See Article 11, Vernon's Ann.C.C.P., 1925.

mit her fifteen peremptory challenges, used the ten challenges permitted, and complained that there were still jurors who were objectionable to her. Cf. *Peak v. State,* 522 S.W.2d 907 (Tex.Cr.App.1975); *Chappell v. State,* 519 S.W.2d 453 (Tex.Cr. App.1975). She also requested additional challenges. See *Acosta v. State,* 522 S.W.2d 528 (Tex.Cr.App.1975).

In *Boles v. State,* 102 Tex.Cr.R. 634, 279 S.W. 261 (1926), two defendants were jointly tried for murder. The trial court limited the defendants to a total of fifteen peremptory challenges in all rather than eight each as the statute (Article 691, Vernon's Ann.C. C.P., 1916) then required. The trial judge qualified the bills of exception by stating he had overlooked the fact that there was a joint trial, his attention was not directed to the same, and no injury was shown. In reversing, this court said:

> "We think the action of the learned judge in this instance was clearly erroneous, and that under the law it was not incumbent upon the appellants to show injury, but that, when they are deprived of this right to exercise their full number of peremptory challenges, there is but one thing for this court to do, and that is to reverse the case."

In *Benson v. State,* 95 Tex.Cr.R. 311, 254 S.W. 793 (1923), this court held that if the privilege of exercising peremptory challenges conferred by statute is denied the right to a fair trial is abridged.

In several cases decided under former Codes of Criminal Procedure, it was held that the defendant was entitled to his fifteen peremptory challenges in a capital case even though the prosecutor had announced he would not seek or ask for the death penalty. This was so because such announcement did not have the effect of removing death as a possible penalty and the jury theoretically could still impose death. Therefore, the refusal to permit the fifteen challenges was error. See *Kerley v. State,* 89 Tex.Cr.R. 199, 230 S.W. 163 (1921); *Viley v. State,* 92 Tex.Cr.R. 395, 244 S.W. 538 (1922) (Opinion on Rehearing). See also *Perez v. State,* 99 Tex.Cr.R. 489, 244 S.W. 548 (1922).

It was also true in trials under former Codes that if death was not a possible penalty, regardless of the nature of the offense charged in the indictment, it would not be error to refuse the fifteen peremptory challenges applicable to capital cases. In *Cheek v. State,* 4 Tex.App. 444 (1878), the Court of Appeals in 1878 held that where a person was charged with a capital offense but convicted of a lesser included offense and then awarded a new trial he could not upon re-trial be convicted of any higher offense than the one of which he was originally convicted and upon re-trial was limited to the challenges which were applicable thereto. See also *Hudson v. State,* 28 Tex.App. 323, 13 S.W. 388 (1890); *Blackwell v. State,* 29 Tex.App. 194, 15 S.W. 597 (1890); *McKinney v. State,* 31 Tex.Cr.R. 583, 21 S.W. 683 (1893); *Welcome v. State,* 438 S.W.2d 99 (Tex.Cr.App.1969); *Branch v. State,* 445 S.W.2d 756 (Tex.Cr.App.1969). In *Walker v. State,* 28 Tex.App. 503, 13 S.W. 860 (1890), there was no error in refusing to order a special venire applicable to capital cases in view of the fact that it was undisputed the defendant was less than 17 years old at the time of the alleged offense and thus could not be given the death penalty under Article 35 of the then existing Penal Code[5] despite the fact he was charged with a capital offense. Cf. *Cheek v. State,* supra. And it has been held that when the capital feature of an indictment for robbery by assault with a firearm has been abandoned the defendant is not entitled to a special venire. *Caballero v. State,* 171 Tex.Cr.R. 133, 346 S.W.2d 343 (1961). As earlier noted under the provisions of Article 1.14, Vernon's Ann.C.C.P., 1965, as amended, when the State waived

5. Now see V.T.C.A. Penal Code, Sec. 8.07(e); former Article 31, Vernon's Ann. P.C., 1925; *Ex parte Adams,* 383 S.W.2d 596 (Tex.Cr.App.1964); *Ex parte Enderli,* 110 Tex.Cr.R. 629, 10 S.W.2d 543 (1928).

the death penalty in a capital case, "the case was in effect reduced to a noncapital case." *Clardy v. State,* 436 S.W.2d 535 (Tex.Cr.App.1968). See also *Elliott v. State,* 412 S.W.2d 320 (Tex.Cr.App.1967); *Smith v. State,* 455 S.W.2d 748 (Tex.Cr.App. 1970). It is clear that these cases were decided on the "penalty" view of the case. If the death penalty was not legally possible, then it was not a capital case. It is noted that Article 47, Vernon's Ann.P.C., 1925, provided in part: "An offense for which the highest penalty is death is a capital felony." In such former Code cases, although death was no longer a possible penalty, the defendant was subject to the remaining range of punishment provided by statute, which was usually a wide range of punishment.

It is observed that said Article 47 has now been replaced by V.T.C.A. Penal Code, Secs. 12.02, 12.03 and 12.04. Sec. 12.02 divides offenses into felonies or misdemeanors; Sec. 12.03 classifies misdemeanors; Sec. 12.04 classifies felonies and provides in Subsection 1 for "capital felonies." The punishment for a capital felony is provided at death or life imprisonment by V.T.C.A. Penal Code, Sec. 12.31. We do not otherwise find capital felony defined in the new Penal Code. The language quoted above from former Article 47 was not brought forward.

Despite any former Code cases, the appellant calls attention to the Practice Commentary following V.T.C.A. Penal Code, Sec. 19.03 (Capital Murder), under which the instant case was prosecuted, which reads in part:

"Section 19.03 is a separate offense, punishable by a mandatory sentence of death or life imprisonment, see Section 12.31, and once an indictment is presented for capital murder the prosecutor may not waive the death penalty as he could under C.C.P. art. 1.14 before that article was amended by the Capital Felony Act of 1973. The offense's mandatory nature is the first of the constitutional bases touched by the legislature in recognition

of the fact that three of the majority in *Furman* objected to the death penalty essentially because of its discretionary application."

In addition to Section 19.03 appellant cites V.T.C.A. Penal Code, Sec. 12.04 (Classification of Felonies), which classified felonies into four categories, including "(1) capital felonies," and also notes the special procedure provided in capital cases as provided by Article 37.071, Vernon's Ann.C. C.P., as well as the amendments to Articles 1.14 and 35.15 and 35.17, Vernon's Ann.C. C.P., previously discussed. Appellant argues that by virtue of such enactments the Legislature has mandated the "category of cases" view of capital murder as opposed to a "penalty" view. Admitting that there was some benefit in the trial court's erroneous exclusion of the death penalty, appellant nevertheless argues that the procedure provided by law nevertheless applied in view of the "category of cases" view and the fact that both the minimum and maximum punishment under the circumstances of the instant case was the mandatory penalty of life imprisonment.

Appellant cites *United States v. Watson,* 496 F.2d 1125 (4th Cir. 1973), where the defendant was charged under 18 U.S.C., Sec. 1111, with first degree murder. The trial was a post-*Furman* trial, and thus the Government did not seek the death penalty. The defendant was sentenced to life. On appeal the defendant contended the court erred in not granting him two appointed counsel as provided in 18 U.S.C., Sec. 3005, in capital cases. The Government argued it was not a "capital crime" at the time the additional attorney was requested in light of *Furman.* Here, the issue of whether capital offenses should be considered as a separate classification of offenses or only as applicable where the extreme penalty is sought vis-à-vis the procedure statutorily required for capital crimes was squarely joined. The case was reversed for the failure to follow the *procedure* in capital

crimes of providing two attorneys. The court said:

"Were we convinced that defendant's exposure to the risk of the imposition of the death penalty was the sole reason for the two-attorney requirement in § 3005, we would be inclined to agree with the government. However, we believe that there is a significant chance that other considerations also underlay the two-attorney requirement.

\* \* \* \* \* \*

"It is not unlikely that Congress may have also sought to buttress the defense with two attorneys to provide greater assurance that a defendant's rights would be fully observed. As a consequence, we are unable to say, absent a clear legislative expression, that the possibility of the imposition of the death penalty was the *sole* reason why Congress gave an accused the right to two attorneys.

\* \* \* \* \* \*

"We therefore hold that, notwithstanding *Furman,* defendant had an absolute statutory right to two attorneys under § 3005." Id. at 1128–1129.

■ We agree that in the wake of *Furman* the Legislature has adopted a "category of cases" view and has adopted a mandatory procedure to be followed in capital cases where the extreme penalties of death or life imprisonment are involved, and that it is not possible to say, absent a clear legislative expression, that the possibility of the imposition of the death penalty was the *sole* reason the Legislature mandated the procedure to be used in capital murder cases. Under the statutory scheme adopted, the State may not waive the death penalty, but even in cases such as the instant one where such waiver has been improperly permitted, the capital case proce-

dures, including the right to fifteen peremptory challenges, are still applicable even though the only possible penalty under the circumstances would be life imprisonment.

The State points out that Article 35.13, Vernon's Ann.C.C.P., 1965, as amended in 1967, provides:

"A juror in a capital case in which the state has made it known it will seek the death penalty, held to be qualified, shall be passed for acceptance or challenge first to the state and then to the defendant. Challenges to jurors are either peremptory or for cause."

■ The State argues that since this Article has not been amended since 1967 it would by implication either require or allow the State to continue to give notice if the State seeks the death penalty. In light of the amendments to Articles 1.14, 35.15 and 35.17, Vernon's Ann.C.C.P., expressly eliminating reference to giving such notice and indicating the legislative intent by the later enactments, we cannot agree with the State's position. The language in Article 35.13, Vernon's Ann.C.C.P., was possibly overlooked in the reform of the law following *Furman* and does not, in our opinion, nullify the obvious intent of the Legislature as reflected by the later enactments.[6]

Being convinced that the court fell into error in refusing to allow the appellant fifteen peremptory challenges in the trial of this capital case, the judgment must be reversed and the cause remanded.

■ Having concluded that this was a capital offense, we hold the trial court also erred in refusing the demand to have the jurors examined on voir dire individually and apart from the entire panel. See Article 35.17, supra, as amended.

---

**6.** It is also observed that Article 35.16(b)(1) relating to challenges for cause still provides: "That the juror has conscientious scruples in regard to the infliction of the punishment of death for crime, in a capital case, where the State is seeking the death penalty . . . ." For the same reasons stated above with regard to Article 35.13, we do not conclude such language nullifies the obvious legislative intent expressed by later enactments.

The judgment is reversed and the cause remanded.[7]

7. In the event of a retrial the appellant will not be able to waive trial by jury in light of Article 1.14, Vernon's Ann.C.C.P. (set forth in the body of the opinion), and it is here noted that the doctrine of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), will not normally be involved so that death will be an applicable penalty upon retrial.

*Pearce* held that neither the double jeopardy provision nor the due process clause of the Fourteenth Amendment absolutely bars imposition of a more severe sentence upon re-conviction of a defendant who has had original conviction set aside at his own behest, but that due process of law requires that vindictiveness against a defendant for having successfully attacked his prior conviction must play no part in the punishment assessed after he receives a new trial. Since a defendant's fear of such vindictiveness may unconstitutionally deter a defendant from attacking his earlier conviction, due process requires a defendant be freed of apprehension on the part of the *sentencing judge*.

In order to insure the lack of vindictiveness on the part of the sentencing judge, the *Pearce* opinion required the judge to make certain findings before the punishment assessed at the second trial could be more severe than at the first trial.

However, in *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the United States Supreme Court held that the imposition of a higher penalty *by a jury* upon retrial after a reversal of a state conviction did not violate the double jeopardy provision nor due process clause of the Fourteenth Amendment where *the jury* is not informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness. See also *Fairris v. State*, 515 S.W.2d 921 (Tex.Cr.App.1974), and cases there cited; *Weeks v. State*, 521 S.W.2d 858 (Tex.Cr. App.1975).