Willie HICKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 064–82.

Court of Criminal Appeals of Texas, En Banc.

Jan. 4, 1984.

Anthony C. McGettrick, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty. and Shannon E. Salyer and Aubrey R. Williams, Asst. Criminal Dist. Attys., Corpus Christi, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant[1] was indicted for capital murder. He was convicted of the lesser includ-

---

1. Because of the result below, the State is be-
fore us as petitioner and Hicks as respondent.

ed offense of criminally negligent homicide, a misdemeanor. The court assessed punishment at one year's confinement.

The cause was reversed by the 13th Court of Appeals (Corpus Christi) in an unpublished opinion delivered November 30, 1981, for fundamental error in allowing the State to waive the death penalty.

The Court of Appeals relied upon our opinions in *Batten v. State,* 533 S.W.2d 788 (Tex.Cr.App.1976); *Ex Parte Dowden,* 580 S.W.2d 364 (Tex.Cr.App.1979), and *Ex Parte Jackson,* 606 S.W.2d 934 (Tex.Cr.App. 1980).

In each of those cases we held that the State may not waive the death penalty in a capital murder case, but relief was granted in *Dowden* and *Jackson* because the defendants had waived their right to jury trials upon the State's (ineffective) waiver of the death penalty; *Batten* was reversed, not because it was error per se to allow the State to purport to abandon the death penalty, but because such "abandonment" did not authorize the court to abrogate the appellant's rights to 15 peremptory challenges and individual voir dire in a capital case.

In the instant case, unlike *Batten,* the court permitted appellant to make 15 challenges; no individual voir dire was sought.

Where, as here, no right granted a capital defendant is abrogated upon the State's purported abandonment of the death penalty, we perceive no harm in the abandonment itself.

The judgment of the Court of Appeals is reversed and the cause remanded for that court's consideration of appellant's remaining grounds of error.

ONION, P.J., dissents.

MILLER, J., not participating.

For convenience, however, we shall refer to the parties as they were denominated in the Court of Appeals: appellant and the State.

1. The record does not reveal any such admission; however, it does show that in reading the indictment to take appellant's plea before the jury the State omitted the second paragraph containing allegations in terms of Article 37.-

CLINTON, Judge, concurring.

The startling fact that an accused indicted for capital murder is ultimately convicted of criminally negligent homicide is enough to cause a practical mind to wonder just why appellant feels offended at the certainty of serving a year in county jail when he once faced the prospect of death by injection. From that and other bizarre circumstances that developed in this cause, one would prefer to regard its disposition as an aberration—without substantial precedential value. However, the formulation by which the majority resolves the problem appears to be a harbinger, and that gives one pause.

We are informed by the local district attorney that the problem began when his prosecutor made an "untimely, candid and now much-regretted admission that the State did not intend to urge that the jury seriously consider the death penalty."[1] In turn, addressing the jury panel at commencement of voir dire, the trial judge pointed out and instructed its members as follows:

"This is a case charging capital murder. State law provides that punishment for one found guilty of capital murder is confinement in the Texas Department of Corrections for life or by death. However, in this case *the State has made it known to the Court that it is not seeking the death penalty.*[2] Therefore, you are instructed that a sentence of life imprisonment is mandatory for one convicted of capital murder. You are not to concern yourself with the issue of a death penalty."

The judge substantially restated the situation a few moments later to lay a predicate for his question of whether the mandatory

071(b), V.A.C.C.P. The essence of what the jury heard is that appellant "did then and there while in the course of committing robbery, intentionally cause the death of [named victim] by suffocating [him]."

2. All emphasis is added by the writer of this opinion unless otherwise indicated.

punishment of imprisonment for life would affect any juror's deliberations on any issue of fact in the case. On neither occasion was there an objection, nor when the judge explained that voir dire would be conducted by questioning the panel collectively on general matters, and then individually as need be. The State and appellant exercised fifteen peremptory challenges. There is nothing in the record made in the trial court to suggest that appellant was the slightest bit displeased with such procedures as were employed by the trial court and followed by the parties. Indeed, in this capital murder case, appellant was permitted to elect that the judge of the trial court assess punishment after the jury found him guilty of the lesser included offense of criminally negligent homicide.

On appeal to the court of appeals in his brief appellant presented eight grounds of error, but none remotely touched on the problem now under consideration. In fact, not until oral argument did appellant request the court of appeals to consider the matter as unassigned error in the interest of justice; after that request was granted appellant submitted a supplement to his brief, setting forth the ground of error that the trial court erred in permitting the State to waive the death penalty, citing two cases discussed by the majority herein. That ground of error was sustained by the court below for fundamental error in allowing the State to waive the death penalty. The State's motion for leave to file a motion for rehearing was overruled without written opinion,[3] and we granted its petition for discretionary review to determine whether the court of appeals correctly resolved the problem.

*Batten v. State,* 533 S.W.2d 788 (Tex.Cr. App.1976) is the seminal opinion in this field of the Texas law of capital murder, and from it we know that "the State may not waive the death penalty," *id.,* at 793. But, as the district attorney would have it, the majority distinguishes *Batten* and its progeny and, like the State Prosecuting Attorney urges, the majority sees "no harm." In the latter respect, the rationale of the majority is stated thusly:

"Where, as here, no right granted a capital defendant is abrogated upon the State's purported abandonment of the death penalty, we perceive no harm in the abandonment itself."

Lurking in that statement is, it seems to me, much potential for mischief in the courtroom. See, e.g., *Ex parte Bailey,* 626 S.W.2d 741 (Tex.Cr.App.1981).

If any error was committed in the case at bar, it was when the trial judge construed a remark by the prosecuting attorney to mean that "the State has made it known to the Court that it is not seeking the death penalty." Yet, for all we know it was no more than "that the State did not intend to urge that the jury seriously consider the death penalty"—just as the district attorney represents.[4] However, even if error, the question is whether it is *fundamental* in nature, as found by the court of appeals.

Whatever the ultimate definition of "fundamental error," leading to a conclusion that an accused has not had a fair and impartial trial, it surely will not be less than what a reviewing court looks for in order to determine "reversible error" when timely objection was made to the alleged erroneous action or ruling of the trial court. In *Batten,* supra, dealing with a situation in which "such waiver [of the death penalty by the State] has been improperly permitted," the Court insisted that "the capital case procedures ... are still applicable even though the only possible penalty under the

---

**3.** The State argued that to find fundamental error in the premises "is to enshrine form and denigrate substance." Appellant now rejoins that to approve what occurred in this cause would be to permit the State "to use a capital murder indictment to take the issue of punishment away from the jury" at the outset, "notwithstanding the fundamental role designed for the jury in a capital murder trial."

**4.** In his reply to the State's brief on the merits of our discretionary review, appellant asserts that the prosecutor *asked* the judge to inform the jury panel that the death penalty was not being sought.

circumstances would be life imprisonment." *Batten, supra,* at 793. Since those procedures were denied in two material respects—right to fifteen peremptory challenges and right upon demand to have prospective jurors examined individually and separately on voir dire—the Court found "reversible error," without any indication it was fundamental in nature.

In the case at bar appellant has yet to contend that there is *any* error in applicable procedures for trying a capital case beyond the initial comments and instructions of the trial judge to the prospective jurors, and none is apparent from the record. Patently, once the jury found appellant guilty of criminally negligent homicide, capital punishment procedures became moot. Thus, though the State may have been "improperly permitted" to waive the death penalty, all other procedural rights were available to appellant during the trial of this capital murder indictment until the punishment phase. Whatever error arose from the statements of the judge to members of the jury panel is not such that denied appellant a fair and impartial trial. Indeed, under the rationale of *Batten* it is not even "reversible error," *id.,* at 790. Thus, we need not look to see if appellant suffered "harm."

Accordingly, while I do not subscribe to the rationale of the majority, I find that fundamental error is not presented and, therefore, join the judgment of the Court.

TEAGUE, Judge, dissenting.

The Corpus Christi Court of Appeals correctly reversed appellant's conviction because the trial court permitted the State to waive the death penalty prior to the commencement of the voir dire examination. In its decision, the Court of Appeals relied upon several leading decisions of this Court for authority, namely, *Batten v. State,* 533 S.W.2d 788 (Tex.Cr.App.1976) (A unanimous opinion authored by our presiding judge); *Ex parte Dowden,* 580 S.W.2d 364 (Tex.Cr. App.1979) (A 6–3 opinion authored by our presiding judge); *Ex parte Jackson,* 606 S.W.2d 934 (Tex.Cr.App.1980) (Another unanimous opinion authored by our presiding judge). Also see *Eads v. State,* 598 S.W.2d 304 (Tex.Cr.App.1980); *Ex parte Bailey,* 626 S.W.2d 741 (Tex.Cr.App.1981). In each of these cases, this Court held that Articles 1.13 and 1.14, V.A.C.C.P., preclude either the State or the defendant from waiving trial by jury on the issue of guilt or punishment where the accusation is capital murder.

Today, however, a majority of this Court amends Art. 1.13, supra, to read as follows: "The State may not waive trial by jury where the accusation is capital murder unless it is shown that the defendant was convicted of some lesser offense."

I find from what is stated in the majority opinion that the majority, in order to reach its result, evaluates, analyzes, and discusses the issue from hindsight, i.e., by first looking to the verdict of the jury to see what offense the jury found that appellant had committed, it is able to conclude that he was not harmed by the State abandoning, at the commencement of the voir dire, the death penalty.

However, what the majority has conveniently overlooked is what the Legislature of this State mandated when it enacted Articles 1.13 and 1.14, supra. The latter statute expressly states: "The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case." Implicit therein is that the State also may not waive the right of trial by jury as to punishment where the charge is capital murder. It is obvious to me, if no one else, that the majority has concluded that what the Legislature has mandated may now be rendered impotent if the defendant is not convicted of capital murder.

I must ask: If the defendant cannot waive the right of trial by jury, as to guilt as well as punishment, where the charge is capital murder, then how can the State waive the death penalty where the charge is capital murder? If the State has the right to waive the death penalty, where the accusation is capital murder, then why cannot the defendant waive a jury where the

accusation is capital murder? However, as recently as November 25, 1981, this Court held in *Ex parte Bailey,* supra, that even where the prosecuting attorney, the defense counsel, the defendant, and the trial judge all agreed in a capital murder case that the death penalty was being waived, nevertheless, the trial judge could not assess the penalty. Presiding Judge Onion, in his concurring opinion therein, pointedly remarked: "Thus, even if it could be said that the applicant waived trial by jury, the State could not waive the death penalty and the trial judge would be without authority to assess punishment." (743).

I need not discuss the faulty reasons the majority gives why the principle of law stated in *Batten* and the other above cases do not apply to this cause, because Presiding Judge Onion has more than adequately done that in the concurring opinion he filed in *Ex parte Bailey,* supra.

Upon close analysis and reflection, I find that the majority has not really changed the law; instead, it has picked up enough votes to adopt what the dissent stated in *Ex parte Bailey.*

I recently stated the following in the dissenting opinion I filed in *Brown v. State,* 657 S.W.2d 797 (Tex.Cr.App.1983): "[A]t the present time, the criminal law of this State, subject to Federal review and intervention, is determined by the predilections of at least five members of this Court." Today, I find myself witnessing the application of that egregious "principle of law."

Because the Court of Appeals correctly decided this cause, the State's petition for discretionary review should be dismissed as improvidently granted. To the majority not doing that, and additionally sub silentio overruling a sound principle of law, I must respectfully dissent.