**Laura Lee Anderson GOODE,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 345–85.**

Court of Criminal Appeals of Texas,
En Banc.

Nov. 18, 1987.

**454**

Bruce Neill Smith (on appeal only), Beaumont, for appellant.

James S. McGrath, Dist. Atty. & John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of capital murder, V.T.C.A. Penal Code, § 19.03(a)(3), and, upon a negative finding on future dangerousness, Art. 37.071, V.A.C.C.P., sentenced to life imprisonment. On appeal, the court of appeals for the Ninth Supreme Judicial District affirmed with one justice dissenting. *Goode v. State*, No. 09–33–059CR (delivered February 21, 1985) (unpublished). Appellant then petitioned this Court for discretionary review, arguing *inter alia*, that the court of appeals erred in affirming the denial of her motion for mistrial timely made after the trial court limited her to nine peremptory challenges during jury selection and then severed the only jointly tried codefendant, during the State's case in chief, for the express reason of antagonism and mutually exclusive defenses. Noting that this appeared to be an important question of state law which has not been, but should be, settled by this Court, we granted review pursuant to Tex. R.App.Pro. Rule 200(c)(2). We will reverse the court of appeals and remand the cause for a new trial.

### I.

The evidence at trial, viewed in the light most favorable to the verdict, showed that appellant and her mother, Rowena Anderson (hereafter "Rowena"), employed appellant's brother, Johnny Anderson, (hereafter "Anderson"), and a mutual friend Delvin Johnson, (hereafter "Johnson"), to murder appellant's husband. All four were originally charged with capital murder in separate indictments. One week after she filed a "Motion for Speedy Trial," however, Rowena was jointly reindicted with appellant. The State then announced

its intention to try mother and daughter together. See, Art. 36.09, V.A.C.C.P. Both moved for severance and separate trials immediately upon learning of these developments.[1]

During subsequent pretrial hearings, appellant introduced evidence showing that "Rowena's position at trial will be that she is innocent and [appellant] is the culpable party [and] appellant would do the same as regards Rowena...." In addition, she notified the court of her desire to introduce evidence of prior acts of violence by Rowena. Moreover, she asserted that she would testify in the guilt phase of the trial (which she did) but that Rowena would not (which Rowena's counsel confirmed) and therefore that her attorney would have a duty to comment upon Rowena's silence, creating an irreconcilable conflict between appellant's Sixth Amendment rights under the Federal Constitution and Rowena's Fifth Amendment privilege. See, *De Luna v. United States*, 324 F.2d 375 (CA5 1963), reh. denied, 324 F.2d 375 (CA5 1963). Finally she argued that trial under these circumstances would deprive her of seven peremptory challenges and force her to ac-

cept a jury selected in part by a codefendant biased towards the prosecution's interests.

Upon the State's representation that severance for antagonism is limited to codefendants pursuing *mutually exclusive* positions "so that the belief of one defendant's story requires his acquittal and ... the other's conviction," that this would be satisfied only if appellant "gets on the stand and says: 'Rowena, my mother, did it. I didn't,'"[2] and that, given the codefendant's relationship, such a claim would be "purely speculation" and "almost against common sense," the trial court denied the motions to sever and proceeded to try appellant and her mother together.[3]

As a result, the State received sixteen peremptory challenges during jury selection, Rowena received eight and appellant, granted an extra peremptory challenge on her motion after exhausting her allotted eight, received nine. Appellant expressly accepted six of the eight venirepersons struck by Rowena and, objected or requested additional peremptory challenges and reurged her motions for mistrial and sever-

1. Codefendant Johnson was granted limited immunity, pled pursuant to a plea bargain and testified for the State at appellant's trial. Codefendant Anderson was subsequently tried and convicted separately.

2. This is somewhat of an exaggeration. The defendants' positions must be "mutually exclusive" in the sense that "the jury in order to believe the core of one defense, must necessarily disbelieve the core of the other," See, *United States v. Lee*, 744 F.2d 1124, 1136 (CA5 1984) and *De Grate v. State*, 518 S.W.2d 821, 822 (Tex.Cr.App.1975). In any event, appellant *did* attempt to exculpate herself during her case in chief by, *inter alia*, inculpating her mother. Thus, for example, she introduced evidence that Rowena had repeatedly attempted to injure or kill her (Rowena's) husband, often by use of a knife, twice with a firearm and once by poison; that she had threatened to kill appellant's husband a number of times in the months prior to his death, most recently the day before his murder; and that, after the day of the murder, Rowena told appellant that she (Rowena) had killed appellant's husband because of an argument over an illegal narcotics deal. Moreover, appellant testified that two days before the murder she overheard Johnny Anderson volunteer to kill her husband for Rowena, and that she overheard him so offer again the day before the murder to which Rowena replied "No, I hired

Johnson." Finally, appellant expressly accused Rowena of killing her (appellant's) husband at least six times during her testimony.

In addition, counsel for appellant and Rowena often clashed during *voir dire*, more than once accusing each other of being the guilty party. Indeed, the defendants became so antagonistic at one point that Rowena's counsel asked to be seated at the prosecutor's table.

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

3. In addition, however, the court expressly ruled that both defendants' motions would remain "continuous" or "running" throughout the trial. While this court has previously indicated skepticism concerning the efficacy of a "running objection," e.g., *Goodman v. State*, 701 S.W.2d 850, 863 (Tex.Cr.App.1985), we treat this ruling as a formal recognition by the trial judge of his continuing duty under the Federal Constitution to order a severance, *sua sponte* if necessary, should sufficient prejudice appear. See *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 948, 4 L.Ed.2d 921, reh. denied, 363 U.S. 858, 80 S.Ct. 1605, 4 L.Ed.2d 1739 (1960); and *Satillan v. State*, 470 S.W.2d 677 (Tex.Cr.App. 1971).

ance as each was excused. All objections and motions were denied. The jury was then impaneled and sworn and trial recessed for one week.

During the recess appellant's counsel learned that one of his investigators had, by misrepresenting herself as an agent of Rowena's attorney and against express orders from counsel for both defendants, repeatedly interviewed Rowena about the offense. She taperecorded at least one of these interviews. Some of the information thus obtained was highly prejudicial to Rowena and inconsistent with her prior statements. Ultimately the investigator also delivered a copy of the taperecorded interview to Rowena's counsel.[4]

Counsel for both defendants then notified the court of these developments and reurged their motions for mistrial, severance and separate trials. Counsel for Rowena also surrendered the taperecording to the court. The court again denied the motions, and instead ordered appellant's counsel to submit all evidence derived from the interviews for pretrial *in camera* inspection and not to use that evidence without first approaching the bench and allowing the court to decide "whether ... to declare a mistrial as to one of the defendants and sever one from the case." Appellant and Rowena timely objected to these orders.

Trial resumed the following Monday. After direct examination of the State's second witness, however, counsel for appellant informed the court that he desired to use some of the information obtained through the interviews. Counsel for Rowena ob-

jected. After further discussion in chambers with both counsel and another review of the tape, the court concluded that appellant and her mother were pursuing "mutually exclusive defenses," and had not coordinated their trial strategy or tactics. At the State's suggestion, the trial court sought to remedy this conflict by severing Rowena only and ordered the trial continued against appellant. Appellant's objection and subsequent motion for mistrial were denied.[5]

Appellant was ultimately convicted. Rowena was subsequently tried separately and acquitted. Appellant appealed, asserting, *inter alia*, that the trial court "abused its discretion in denying Appellant's motion for mistrial when ... Rowena's ... case was severed." The court of appeals found it "meaningful and important ... that virtually 200 pages of testimony and arguments were submitted to the trial court" at the pre-trial hearings on the motion to sever. It also noted that the trial court expressly left the motions to sever in a "running" or "continuing" posture and "recognized a continuing duty to grant the motion[s] ... if ... that became the proper thing to do." It concluded that "the trial court showed patience, forbearance and conscientiousness" and rejected appellant's claim, "especially in view of the investigative action of [her] agent."

## II.

Appellant argues that the failure to grant her motion for mistrial violated her "statutory right under" Art. 35.15(a), supra, to "fifteen (15) peremptory strikes in a

---

4. Neither the recording nor a transcript thereof appears in the record before this Court. Therefore, we do not know the precise contents of this conversation.

5. The State mistakenly asserts that "neither party objected when the trial court decided to grant a mistrial to Rowena ... instead of appellant." In fact, the trial court first indicated that it would sever the defendants, then stated that it "was going to grant a mistrial as to one of the two defendants," and then solicited objections and opinions from all parties. After the State argued that the trial should proceed as to appellant, her counsel objected and argued that:

"... we have been in antagonistic positions from the beginning and have so stated ... we

have gone through this trial to this point in an antagonistic position to our codefendant. We've had to go through the entire jury selection that way. It has all resulted in problems with jury selection. We have received less peremptory strikes.... Our client has been suffering as a result of being in this position in jury selection and all the other decisions that we have pointed out as we went along.

For that reason, I think that we would be prejudiced by continuing at this point having gone this far in a joint trial."

The trial court overruled this objection, and then denied appellant's motion for mistrial.

capital case," her rights to a trial by an impartial jury under the United States and Texas constitutions and her due process right under the Fourteenth Amendment to the United States Constitution.[6] We conclude that appellant was denied six of the fifteen peremptory challenges to which she, as a capital murder defendant actually tried separately from all codefendants, was entitled under Art. 35.15(a), supra.

### A.

Joinder and severance of defendants is governed by Art. 36.09, supra. It provides in pertinent part that:

"Two or more defendants who are jointly or separately ... indicted ... for the same offense ... may be, in the discretion of the court, tried jointly or separately as to one or more defendants; ... provided ... that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that ... a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants."

This provision represents a significant change from former law. Prior to its adoption in 1965, Acts 1965, 59th Lg., p. 317 ch. 722 § 1, *all* defendants had an absolute right to severance upon timely request.[7] No showing of prejudice was required. Since adoption of the 1965 Code, however, codefendants may, at the option of the State, *Joines v. State*, 482 S.W.2d 205 (Tex. Cr.App.1972), be "tried together" unless they can show "that a joint trial would be prejudicial." Art. 36.09, supra, *Special Commentary*.

Article 35.15(a), supra, provides:

"In capital cases both the State and defendant shall be entitled to fifteen per-

emptory challenges. *Where two or more defendants are tried together,* the State shall be entitled to eight peremptory challenges for each defendant; and *each defendant shall be entitled to eight peremptory challenges.*"

This provision is identical to Art. 615 of the 1925 Code, see Article 35.15, *Practice Commentary*, and has been the rule in this state since adoption of that Code. However, prior Codes provided for a strikingly different scheme, *viz:*

"In capital cases the defendant shall be entitled to twenty peremptory challenges and the state to ten, and *where there are more defendants than one tried together, each defendant shall be entitled to twelve peremptory challenges and the state to six for each defendant.*"

Art. 672, 1895 Code; Art. 572, 1857 Code of Criminal Procedure. Thus, before adoption of the 1925 Code, a capital defendant "tried together" with a codefendant stood in as good a position with respect to the number of peremptory challenges, relative to the State, as one tried separate from his codefendants. Moreover, because joint trials under the system prevailing prior to the present Code were thought by some to produce more uniform sentences, see, Art. 36.09, *Interpretative and Special Commentaries,* a defendant might well have decided to accept fewer peremptory challenges in the hopes of gaining a lighter sentence, or one at least more commensurate with that of his codefendant. Such a defendant, having failed to object to joint trial before the return of a verdict, would likely waive any complaint based upon mere limitation of his peremptory challenges to the number mandated for defendants "tried together." Cf. *Foster v. State,* 652 S.W.2d 474 (Tex.App.—Houston (1st) 1983) *aff'd* 693 S.W.2d 412 (Tex.Cr.App.

---

**6.** Appellant does not invoke the similar "due course of law" provision on Article I, § 19 of the Texas Constitution. See also Article 1.04, V.A.C. C.P. Because we agree with appellant that her right under Article 35.15(a) was violated, we do not decide whether her Sixth Amendment right under the Federal Constitution, her Fourteenth Amendment right to due process of law or her rights under Article I, §§ 10 and 15 of the Texas

Constitution to trial by "an impartial jury" were also violated.

**7.** "Two or more defendants jointly prosecuted may sever in the trial upon the request of either." See also, Art. 587, 1857 Code; Art. 706, 1895 Code; and art. 650, 1925 Code. This was also the common law rule, see 6 Encycl.Dig.Tex. Reports (Cr.) 292–297 (1914).

1985) (Motion for severance first made after guilty stage completed presented nothing for review) and *Crawford v. State*, 74 S.W. 552 (Tex.Cr.App.1903) (Motion for severance after announcement of ready and impaneling jury untimely). If, instead, a defendant wished to receive the "full" number of peremptory challenges granted by the statute, he had only to exercise his absolute right to severance. See, n. 7 ante. Not surprisingly, therefore, this Court had no occasion, before adoption of the 1965 Code, to consider the precise issue now raised by appellant.

Since then, this Court has decided only one case involving an even remotely similar issue. In *Harris v. State*, 516 S.W.2d 931, 933–934 (Tex.Cr.App. 1975), it was held not error to deny a motion for mistrial after severing the only codefendant at the conclusion of the State's examination of its third witness on the erroneous ground that the State had suppressed evidence exculpatory to that codefendant. The Court concluded that:

> "neither [the codefendant] nor the appellant was entitled to a mistrial. *The fact that a "mistrial" was erroneously granted to [the codefendant] would not entitle the appellant to the same* generosity, *absent some error actually requiring a mistrial.* No such error occurred here."

516 S.W.2d at 934.[8]

In contrast to Harris, of course, appellant contends that an error "actually requiring a mistrial" did occur in her trial.

### B.

As long ago as 1921, this Court reversed a capital conviction because the trial court improperly denied the defendant five of the fifteen peremptory challenges to which he was entitled under the predecessor to Art. 35.15(a), supra. *Kerley v. State*, 89 Tex.Cr. R. 199, 230 S.W. 163 (1921).[9] The rationale there was as follows:

> [T]he Legislature has prescribed the procedure to be followed in the selection and formation of the jury. The option to exercise 15 peremptory challenges ... is given by law to the accused. His right to a fair trial is denied him when the privilege of exercising these challenges is arbitrarily taken from him.
>
> \* \* \* \* \* \*
>
> ... [B]y the ruling of the court [the defendant] was made, against his will, to submit his case to 5 jurors whom he sought to challenge, and whom, had the right, according to the statute, been recognized, he could have stood aside upon his peremptory challenge. It was unnecessary to show that these 5 jurors were disqualified....
>
> \* \* \* \* \* \*
>
> ... [T]he law fixes the number of challenges and confers upon the accused the right to arbitrarily exercise them. This right having been denied the appellant in the instant case, he having exercised all of the challenges the court would permit him to use, and having been forced to try his case before jurors who were objectionable and whom he sought to challenge peremptorily, the verdict of conviction rendered by the jury so selected cannot ... with due respect to the law, be held to reflect the result of a fair trial

8. Compare, however, *Garcia v. State*, 626 S.W. 2d 46 (Tex.Cr.App.1981) affirming the capital conviction of a defendant tried together with a codefendant over objection that a venireman was improperly dismissed on the State's challenge for cause, *viz:*

> "Appellant was not caused to exhaust his peremptory challenges by an improper ruling on the challenge for cause. *The prospective juror was excused by a peremptory challenge of the co-defendant who did not exhaust all his peremptory challenges.* The appellant did not lose a peremptory challenge as a result of the court's ruling. No harm has been shown."

626 S.W.2d at 56. In the instant cause it was the trial court, rather than the codefendant, who allegedly erroneously limited appellant's peremptory challenges.

9. The trial court had ruled that the defendant would be allowed only ten peremptory challenges when "the prosecuting attorney expressly" waived the death penalty. This Court found that ruling to be error because the offense with which Kerley was charged "was made a capital offense by the lawmaking power of the state, and ... its classification as such cannot be changed by any declaration that the prosecuting attorney may make." 230 S.W. at 164.

by an impartial jury, which it is the design of our law shall be given to those accused of crime."

230 S.W. at 164–165.

Four years later, the Court relied on *Kerley* to reverse the capital murder convictions of two jointly indicted and jointly tried defendants because the trial court had limited them to a *total* of fifteen peremptory challenges together. *Boles v. State*, 102 Tex.Cr.R. 634, 279 S.W. 261 (Commission of Appeals 1925). Since then, this Court has consistently held that it is reversible error to limit a capital defendant to less than the full number of peremptory challenges granted by Art. 35.15(a), supra, except in narrow circumstances grounded in the literal language of the statute.[10]

### C.

Under Art. 35.15(a), supra, a court may properly limit a capital defendant to less than fifteen peremptory challenges *only* if he is "tried together" with a codefendant.

It is clear that appellant was not "tried together" with either codefendant Anderson or codefendant Johnson. See, n. 1 *ante*, and cf. *Crow v. State*, 89 Tex.Cr.R. 149, 230 S.W. 148 (1921) (Criminal jury trial commences with impaneling or swearing of jury). It is equally clear that none of them was "tried together" with codefendant Rowena in her subsequent retrial. Cf. 23 Tex.Jur.3d, *Criminal Law* § 2951; Arts. 36, 33, 40.08 (repealed), 42.05 (repealed), 44.29 (both before and after amendment by Acts 1987, 70th Leg. ch. 179 § 1(b) and (c)); and Tex.R.App.Pro., Rules 32, 35 and 87(b)(2). Nor would she and appellant have been "tried together" if the trial court had severed her before impaneling the jury. Cf. *Crow*, supra.

■ Anderson received fifteen peremptory challenges in his subsequent separate trial. Rowena also received fifteen peremptory challenges in her subsequent separate retrial. Surely no one would seriously contend that Rowena should have been limited to eight peremptory challenges in her retrial solely because she proceeded together with appellant through a portion of the instant trial. There is no rational basis for holding, on the one hand, that Anderson and Johnson were not "tried together" with appellant, that Rowena was not "tried together" with a codefendant in her subsequent retrial and that appellant would not have been "tried together" with *any* codefendant if Rowena had been severed before the jury was impaneled; but, on the other hand, that appellant *was* "tried together" with a codefendant, and so she alone of all the codefendants could be limited to eight peremptory strikes, merely because she and Rowena proceeded jointly through a portion of her trial. Therefore, given the consequences of adopting a contrary construction, and after examining the context, history and legislative intent of Arts. 35.-15(a), 36.09 and related statutes, see Tex. Gov.Code Ann., § 311.023, we hold that appellant was not "tried together" with a codefendant for purposes of Art. 35.15(a) and was entitled to trial before a jury selected in a procedure in which she was granted a full fifteen peremptory challenges.[11]

---

**10.** See, 27 Tex.Jur.3d, *Criminal Law* § 4326, *Batten v. State*, 533 S.W.2d 788, 793 (Tex.Cr. App.1976) and *Dowden v. State*, 580 S.W.2d 364 (Tex.Cr.App.1979); accord, *Hogue v. State*, 155 Tex.Cr.R. 310, 234 S.W.2d 687, 688 (1950), *Wigginton v. State*, 153 Tex.Cr.R. 574, 223 S.W.2d 232 (1949) (On Appellant's Motion for Rehearing), *Allen v. State*, 552 S.W.2d 843 (Tex.Cr.App. 1977) and *Hicks v. State*, 664 S.W.2d 329 (Tex. Cr.App.1984). See also, *Benson v. State*, 95 Tex. Cr.R. 311, 254 S.W. 793, 795 (1923) (Same rule for non-capital felony).

**11.** Every Code of Criminal Procedure since 1857 has collected the provisions governing trial in a discreet section entitled, appropriately enough, "Trial and Its Incidents" see 1857 Code, Title V; 1895 Code, Title VIII; 1925 Code Title VIII; present Code, Chapters 32 through 39. This section defines a more or less comprehensive scheme, essentially unchanged since 1857, beginning with assembly of the array and the selection of the jury and culminating with the return of a verdict *by the jury so selected,* see e.g. Arts. 35.23, 36.29, 36.31 and 36.33, and, if the verdict is one of guilt, proceeding to assessment of punishment. This scheme is more or less encapsulated in Art. 36.01, V.A.C.C.P., providing that the "Order of Proceedings in Trial," after "the impaneling of the jury," shall proceed from the reading of the charging instrument to the jury and to "a finding of guilt" and punish-

■ Nor, contrary to what the court of appeals appears to have believed, does the conduct of appellant's investigator excuse the trial court's failure to follow the mandatory dictates of the statute once it severed Rowena so that appellant *was* in fact tried *separately* from all of her codefendants. Assuming that there are circumstances under which appellant might forfeit her rights under this statute, we do not find such circumstances present in this case. The investigator acted against the express orders of counsel for both appellant and Rowena. Appellant no more precipitated the unprofessional conduct of the investigator than did Rowena's counsel, or counsel for the state.

Moreover, appellant and Rowena were severed for the express reason that their defenses were so antagonistic as to be mutually exclusive. That is, the jury could have believed one only if it disbelieved the other. See, n. 2 *ante*. It was in the interest of each to inculpate and otherwise undermine the position of the other. That is to say, the codefendant was "placed ... in a position adverse to appellant and comparable to that of the prosecutor." See, *De*

*Grate v. State,* 518 S.W.2d 821, 322 (Tex. Cr.App.1975) and also *De Luna,* supra. This antagonism, apparent to both prior to the selection of the jury, resulted in each defendant examining the jury and exercising her peremptory challenges in a manner prejudicial to the other. The practical result was that appellant confronted two "prosecutors" during jury selection who together received approximately three times the voir dire time and almost three times the number of peremptory challenges that she did. *Payton v. State,* 572 S.W.2d 677, 680 (Tex.Cr.App.1978) (On Appellant's motion for rehearing). See also, *Martinez v. State,* 621 S.W.2d 797, 799 (Tex.Cr.App. 1981).

For these reasons, we hold that the trial court's denial of appellant's timely motion for mistrial, after limiting her to nine peremptory challenges and severing the only jointly tried codefendant during the State's case in chief for the express reason of antagonism and mutually exclusive defenses, was reversible error.[12] Accordingly, the judgments of the court of appeals and

---

ment. See, Art. 580, 1857 Code; Art. 697, 1895 Code; Art. 642, 1925 Code.

*Gibson v. The State,* 3 Tex.App. 437, 438–439 (1878), appears to be the first Texas criminal case to consider "what", in the context of this scheme, "is a trial ... and when can it be said to be complete and at an end?" That court concluded:

"In criminal law it is synonymous with the term, 'criminal action,' which, as used in our Penal Code, means the whole and any part of the procedure which the law provides for bringing offenders to justice ... Such a trial ... may well be held incomplete until all the issues of law as well as of fact have been determined and the final judgment entered. Until this is done, no appeal can be prosecuted. *Hill v. The State,* 41 Tex. 253, 255 (1874) ] Nor is the trial complete until the accused has had an opportunity, if he so desires, to avail himself of his statutory right to present his motion for a new trial and in arrest of judgment. (citations omitted).

This remains a valid statement of the law today. See, 23 Tex.Jur.3d, *Criminal Law* §§ 2528, 3455, 3456, 3569,–70, 3576, 3578–80 and; Arts. 40.01, 40.03, 40.05, 40.08, 44.11, 41.01, 41.02, 41.05, V.A.C.C.P. (repealed) see now Tex.R.App.Pro., rules 30, 31(a), (c) and (e), 32, 33–35, 40(b) and 58.

12. In dissent, Presiding Judge Onion concludes that our holding in this cause runs counter to the dictates of common sense. This conclusion is not self evident, however, and Judge Onion does not elaborate, except to opine that the error was not preserved for appellate review— an untenable view apparently not shared by the court of appeals, which ruled, albeit erroneously in our judgment, on the merits of appellant's contention.

Judge Onion also admonishes us for deciding an issue "not first passed upon by the Court of Appeals." It is true that in rejecting appellant's fourth point of error, *viz.,* that the trial court should have granted her motion for mistrial when Rowena was severed, the court of appeals did not expressly allude to appellant's argument that she was denied her full complement of peremptory challenges. This is not to say, however, that such was not the basis of her argument in her brief on appeal—manifestly it was. It would be unjust for this Court now to ignore the core of appellant's complaint on the ground that the court of appeals, though ostensibly reaching the merits, failed to acknowledge it. In reaching that core argument, we do not thereby pass on a contention not raised and decided by the court of appeals.

the trial court are reversed and the cause is remanded for a new trial.[13]

TEAGUE and WHITE, JJ., concur in the result.

ONION, Presiding Judge, dissenting.

The majority holds that when *two* defendants are jointly tried for capital murder and each receive less than 15 peremptory challenges although by virtue of the ·express provisions of Article·35.15(a), V.A.C.C.P., and one defendant is later granted a motion for severance in mid-trial, the other defendant is entitled, at his or her option, to a motion for mistrial based on the fact that such defendant did not receive 15 peremptory challenges during the jury voir dire examination. This is new and dangerous law which gives the remaining defendant control over bringing the whole proceedings to a grinding halt at his whim and pleasure. The rule would apply only where there were two defendants not where there are three or four defendants and only one defendant is severed from the case in mid-trial and two or more defendants remain on trial. And there is no reason why the rule adopted today would not apply in non-capital felony and misdemeanor cases where only two are being jointly tried. See Article 35.15(b) and (c), V.A.C.C.P.

The rule espoused by the majority allows the courts of this state to be manipulated by the parties as was the trial judge in this cause. The majority is saying that the proper number of peremptory challenges is not always determined at the time of voir dire examination but can be redetermined upon the joint trial of *two* defendants if one is severed out of the case doing the trial on the merits and the remaining defendant makes a mistrial motion based on the number of peremptory challenges allowed, if that number was less than authorized by statute if the remaining defendant had been tried alone.

The majority takes the phrase "tried together" used in Article 35.15, supra, as well as its predecessors, relating to the number of peremptory challenges allowed and reads it to mean that where two defendants are jointly tried the trial must be completed as to both or otherwise the applicable number of peremptory challenges changes long after the jury has been empaneled and sworn and the trial commenced. That is not the law, has never been the law and should not be the law. Common sense dictates otherwise.

The appellant (Laura Anderson Goode) and her mother, Rowena Anderson, were separately indicted for the capital murder of appellant Goode's husband. So were her brother, Johnny Anderson, and Delvin Johnson. Subsequently the appellant and her mother, Rowena, were jointly indicted for the offense. See Article 36.09, V.A.C.C.P.

On May 24, 1982, the court conducted a hearing on appellant's first pretrial motion for severance and denied the same with full explanation of its reasons for doing so. The matter of peremptory challenges was not a part of the motion to sever. On June 25, 1982, the court conducted a hearing on appellant's second or amended pretrial motion for severance. Here the only significant additional claim was a "De Luna" claim based on *De Luna v. United States,* 308 F.2d 140 (5th Cir.1962), which recog-

---

13. Because it may recur on retrial, we note also that appellant is correct when she argues, in another ground for review, that admission of the statement made by Donna Anderson to police prior to trial, whether as past recollection recorded or as impeachment, was error. The State failed to lay the necessary predicate for the statement as past recollection recorded because Donna could not guarantee the correctness of its contents. See *Welch v. State,* 576 S.W.2d 638, 641 (Tex.Cr.App.1979) and *Wood v. State,* 511 S.W.2d 37, 44 (Tex.Cr.App.1974). In addition, the statement was not admissible as impeachment of the State's witness because the State failed to show prejudicial surprise and showed instead only that the witness "could not now remember if [appellant] had made such [a] statement." *Wood,* supra, at 42. See also *Ellis v. State,* 683 S.W.2d 379 (Tex.Cr.App.1984), particularly n. 2 and authorities discussed therein. We therefore adopt Justice Burgess' dissent on this matter and trust that the State shall conduct itself accordingly should it retry appellant.

We also granted review on another ground alleging improper jury argument. Because even if erroneous, such argument does *not* seem likely to be repeated in the event of retrial, we do not presently address this ground.

nizes the right of jointly tried defendants in certain circumstances to comment on the failure of a codefendant in the joint trial to testify. This motion was likewise overruled. On July 30, 1982, after the jury had been selected and before the testimony commenced a third hearing on severance was conducted after attorneys for the codefendant, Rowena Anderson, filed an affidavit against appellant, her daughter, complaining that agents of the daughter had "violated our attorney/client privilege hearing by taping our client in an interview." An extensive hearing was conducted. It appears that Barbara Cleveland, investigator for appellant's attorneys, had gone to the jail and taped an interview with Rowena Anderson, an interview supposedly very damaging to Rowena, and favorable to appellant. The tape was given not only to appellant's attorneys but a copy was given to Rowena's attorneys in October or November 1981.[1] Supposedly Cleveland did not have authority from appellant's attorneys to undertake such action, and apparently acted without the consent or knowledge of Rowena's attorneys. At one point Tom Mulvaney, one of Rowena's attorneys, told Cleveland not to have any contact with his client, and this may have been before the recording. Mulvaney admitted that he knew that from time to time Cleveland took care of Rowena's laundry, helped her with lipstick, her hairdo and clothes before court appearances, etc., and may have done this and visited the jail after the taping. Cleveland was a most evasive witness, pretending at one point to have no recollection of any tape or recording.

At one point the court stated:

"We're in this mess—or I'm in this mess because of an investigator hired by Mr. Smith and Mr. Bradford who violated her obligation to them and also violated the rights of Rowena Anderson. She has now received information and now she's paddling out of both sides of the boat ... we spent four weeks of jury selection and several thousand dollars of taxpay-

ers' money to get to this point. I would say I am very frustrated, very, very frustrated to have to face this issue...."

The State pointed out that it had not heard the tape, that counsel had insisted that Rowena Anderson would not testify, thus the tape could not be used to impeach her, and that there was no showing at the time that the contents of the tape would ever be used. The State urged the court not to grant severance.

The court then instructed counsel not to use any evidence obtained by Cleveland or any evidence derived therefrom until they had approached the bench during trial and indicated that the use of such evidence had been necessary, and that a decision on its use would be made then.

On August 2, 1982, after the State's second witness had been passed and cross-examined by Rowena's attorneys, and his cross-examination by appellant's counsel commenced, there was a bench conference at which time the appellant's counsel indicated he was about to use the tape in question or evidence derived therefrom. The tape or parts of it was played in the court's chambers.

The record then reflects:

"THE COURT: May I first ask does Mrs. Anderson make a motion for mistrial and to sever?

"MR. MULVANEY: Yes, Your Honor.

"THE COURT: Does Mrs. Goode (appellant) make a motion for a mistrial and a severance?

"MR. BRADFORD (appellant's counsel): Yes, Your Honor."

The court, with the consent of the parties, then privately conferred separately with each set of lawyers to determine if the contents of the tape recording was going to be serious enough to grant a severance.

After these consultations[2] the court stated that it appeared the defenses were *now* mutually exclusive primarily due to the action of the appellant's investigator, and that a motion for severance and mistrial

---

1. The attorneys for Rowena did not learn of the tape for the first time after jury selection as the majority opinion indicates.

2. These consultations are not in the record nor is the content of the tape recording.

would be granted to one of the defendants. He asked for suggestions as to which party it should be. The State responded that if forced to choose, it would prefer to proceed with the trial of the appellant rather than her mother. The court then asked appellant's counsel to "State any objection to your remaining in the case." Appellant's counsel emphasized the defendants "had been in antagonistic positions from the beginning ... and ... this ... evidence [from the tape] simply demonstrates and amplifies our antagonistic position ... We've had to go through the entire jury selection that way. It has all resulted in problems with jury selection. We have received less peremptory strikes ... we are in an antagonistic position ... and [appellant] has been suffering as a result of being in this position in jury selection ... we would be prejudiced by continuing ... We, again, would prefer not to go forward at this time and we would request that we be severed out."

Attorneys for Rowena, the codefendant, took "no position." The court granted Rowena's motion for mistrial and severance and denied the motion for mistrial for the appellant.

On appeal the appellant in point (nee ground) of error four contended that the "trial court abused its discretion and erred in denying appellant's motion for mistrial *when the defendants were severed.*" The argument advanced was that the court abused its discretion in granting severance to Rowena, and not granting appellant a mistrial which would have required a new jury; that she had to "resume" with the same jury Rowena had in part selected, and that her peremptory challenges had been limited (Article 35.15, V.A.C.C.P.) when she should have had 15 such challenges. Appellant asserted a violation of her rights to an impartial jury under the Sixth Amendment, United States Constitution, and Article I, § 15, Texas Constitution, the Fourteenth Amendment due process clause and 15 peremptory challenges under Article 35.-15, supra.

It is observed that at no time when the severance was granted did appellant make any motion for a mistrial based on the number of peremptory challenges earlier allowed under Article 35.15, supra. All the motions for severance previously filed and urged had not been urged on that basis. It is true that when asked to state any objection to appellant remaining in the case appellant's counsel, inter alia, did complain about the jury selection process; but this complaint was not based on the authorities urged by appellant nor was the trial court asked to rule upon the same. Nothing was preserved for review.

In his fifth point of error on appeal appellant complained that the "trial court erred in failing to grant appellant's motions for severance prior to completion of jury selection."

The Beaumont Court of Appeals considered appellant's fourth and fifth points of error together, *Goode v. State* [Tex.App.—Beaumont No. 09-83-059 CR—Feb. 21, 1985) (unpublished) (Slip Op. 12-15). The court concluded: "After a careful review of these several hearings for a severance, and especially in view of the investigative action of Cleveland, an agent of Laura, we find no merit and overrule appellant's fourth and fifth grounds of error." The Court of Appeals did not mention or discuss the jury selection question or the number of peremptory challenges at all.

Despite the foregoing the appellant in his petition for discretionary review urged in ground of review number "III" that the "DECISION OF THE COURT OF APPEALS INVOLVES AN IMPORTANT QUESTION OF STATE LAW WHICH HAS NOT BEEN SETTLED BY THE COURT OF CRIMINAL APPEALS CONCERNING THE RIGHT OF A DEFENDANT IN A CAPITAL MURDER CASE TO THE SELECTION OF A NEW AND IMPARTIAL JURY, ONCE A CO-DEFENDANT IS SEVERED DURING JURY SELECTION, AND THE RIGHT OF SAID DEFENDANT TO HER FIFTEEN PEREMPTORY CHALLENGES."

Despite the fact the severance did not occur during the jury selection, and the fact that the Court of Appeals did not pass on the contention advanced, this Court

**464**

granted, inter alia, ground of review number "III." Now the majority, among whom are those judges who believe that this Court cannot review any contention not first passed upon by the Court of Appeals, has seized upon this cause as a vehicle to lay down a new and unsound proposition of law not supported by the facts or the law.

If this is a sign of things to come, I dissent to this action of the majority with all the concern for the future I can muster.

DAVIS and McCORMICK, JJ., join this opinion.