COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

ALMA MONTES,
)
 No. 08-02-00406-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 168th District Court

)


THE STATE OF TEXAS,
)
 of El Paso County, Texas

)


 Appellee.
)
 (TC# 20020D00998)


MEMORANDUM OPINION



 Alma Montes appeals her conviction for possession of over four hundred grams of cocaine. 
She was charged with both possession and intent to deliver, but the jury found her guilty of the lesser
offense and assessed punishment at confinement for fifteen years and a $5,000 fine. On appeal, she
claims she received ineffective assistance of counsel. Finding no error, we affirm.

FACTUAL SUMMARY


 On August 20, 2001, Appellant planned to visit her husband at the El Paso County Jail. On
the way, she stopped to pick up Eugene Nixon at his apartment. Although they had never met,
Nixon had called her, said he had legal papers that could help get her husband out of jail, and asked
for a ride. Appellant waited at the door while Nixon grabbed a package purportedly containing the
legal documents. Upon entering Appellant's truck, Nixon put the package on the left side of the
floor board. While waiting in line at the jail, Appellant realized she still had her purse with her. She
told Nixon that nothing was allowed inside and that she was taking her purse back to the truck. 
Appellant asked whether he wanted her to take the package as well. Nixon said no. When they
entered the doors to the jail, Nixon told Appellant that the package could get them into trouble. 
Appellant did not leave at this point because she was already inside the jail. It didn't occur to her
to mention Nixon's statement to the officers. Appellant passed through the metal detector, waited
for her keys, and headed toward the elevator. 

 Nixon offered a different scenario. He claimed he met Appellant and her husband a month
or two earlier at a baseball game near his apartment. Appellant then showed up at his apartment on
August 16 asking for his help in getting her husband out of jail. She came to his apartment again on
August 20 talking about a deal to get her husband out of jail. He suggested the two of them go down
to the jail to talk to her husband. Appellant implied she wanted Nixon to go alone, but since he did
not have transportation, they went together. When he got into the truck, Nixon saw a black bag
sitting between the seats. Appellant parked the truck a block down the street from the jail and told
Nixon to carry the black bag since she was carrying her purse. When Nixon asked what was in the
bag, Appellant told him it contained the papers to get her husband out of jail. Nixon claimed that
he tried to give her the bag several times. At the jail, he followed Appellant through Station No. 1
where she checked in for visitation, then to Station No. 2, the security station. When Nixon entered
the security station, the officer asked him what was in the bag. Nixon told him about the papers but
the officer said he would have to inspect the bag. When Nixon opened the bag, he found a black
bundle instead of legal papers.

 According to Edgar Baca, an El Paso County Sheriff's Department detention officer on duty
that evening, Appellant seemed to hesitate after passing through the metal detector. Nixon then
proceeded through, carrying a nylon portfolio. Baca asked Nixon what was in the portfolio and
Nixon told him about the legal papers. Baca suggested that an officer could take the papers upstairs
to be signed. He told Nixon to open the portfolio so he could see the contents. Nixon hesitated and
then handed it over. Inside was a black box a bit larger than a video cassette. Nixon told Baca he
did not know what it was. Appellant told Baca the portfolio wasn't hers. 

 Appellant and Nixon were detained while Baca contacted Lieutenant Chairez and Deputies
Conner and Lovato. At first, Deputy Conner thought the box might contain narcotics, but after
feeling the box, he was concerned it contained explosives. Appellant and Nixon were moved away
from the public. Appellant claimed that she and Nixon were left in a room alone for a few minutes. 
Nixon threatened Appellant's husband and told Appellant to take the blame for the package. 
Appellant was afraid to tell the officers about the threat.

 Appellant and Nixon were then separated and Lieutenant Chairez interviewed them. When
Chairez could not determine the contents of the box, he called Captain Gilbert Pinon. Chairez then
spoke with Sergeant Scott Mann at the Criminal Investigation Division (CID), who instructed him
to act as if the package held explosives and to secure and evacuate the first floor. Sergeant Mann
ultimately contacted the military police for the bomb unit. The bomb unit x-rayed the package but
no electrical wires were observed. After another x-ray was taken, the officers determined that the
package did not appear to be a bomb. When the package was finally opened, it was found to contain
a yellowish, off-white powder. A field tested revealed positive results for cocaine. The total gross
weight of the substance was 1,080.6 grams. 

 On August 21, the Metro Narcotics Task Force Unit adopted the case, meaning that the task
force took custody of the evidence and Appellant's truck. Detective Marcela Gil testified that the
truck was parked in a nearby lot about a block from the jail. She asked Deputy Luis Almonte to
bring his K-9, Blackjack, to sniff search Appellant's vehicle. Blackjack alerted to the bottom of the
driver's seat and the vehicle was transported to the Task Force impound lot. When Gil interviewed
Appellant, Appellant explained that she had received an anonymous call from a man instructing her
to meet him around five in the afternoon at a nearby Furr's if she did not want her husband harmed. 
Appellant drove to Furr's in her truck, parked by the pay phones, and was approached by a white
male on the passenger side. The man opened the door and placed a black portfolio underneath her
seat. He instructed Appellant to drive to Nixon's apartment. Appellant drove to Nixon's home and
delivered the portfolio. When she told Nixon she was going to visit her husband in jail, Nixon
invited himself and brought along the portfolio. Appellant indicated to Gil that she knew some kind
of narcotics were contained in the portfolio and she knew she would be arrested.

 Gil admitted that the statement was not recorded and that the statement was not typed for
Appellant's signature because Appellant had said she would not sign anything on the advice of her
attorney. Appellant denied ever speaking to Detective Gil, maintaining that she gave her statement
to Detective Onesimo Esparza instead.

STANDARD OF REVIEW


 A defendant is entitled to "reasonably effective assistance." Strickland v. Washington, 466
U.S. 668, 687, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 693 (1984); Stafford v. State, 813 S.W.2d 503,
506 (Tex.Crim.App. 1991). However, a defendant is not entitled to errorless counsel or counsel
whose competency is judged by hindsight. Stafford, 813 S.W.2d at 506; Calderon v. State, 950
S.W.2d 121, 126 (Tex.App.--El Paso 1997, no pet.). Under the first prong of the Strickland analysis,
the defendant must show that counsel's performance was deficient, to the extent that counsel failed
to function as the "counsel" guaranteed by the Sixth Amendment. Jackson v. State, 877 S.W.2d 768,
771 (Tex.Crim.App. 1994). The defendant must demonstrate that his attorney's representation fell
below an objective standard of reasonableness under prevailing professional norms. Vasquez v.
State, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Under the second prong, the defendant must
establish that counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687,
104 S.Ct. at 2064, 80 L.Ed.2d at 693; Jackson, 877 S.W.2d at 771. Prejudice is established by a
showing that there is a reasonable probability that but for counsel's unprofessional errors, the result
of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80
L.Ed.2d at 698; Jackson, 877 S.W.2d at 771; Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App.
1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome. 
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771.

 When reviewing a claim of ineffective assistance, we indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable, professional assistance, and the
appellant must overcome the presumption that the challenged conduct can be considered sound trial
strategy. Jackson, 877 S.W.2d at 771; Calderon, 950 S .W.2d at 126. Consequently, allegations of
ineffectiveness of counsel must be firmly founded in the record. Hawkins v. State, 660 S.W.2d 65,
75 (Tex.Crim.App. 1983); Calderon, 950 S.W.2d at 126. Under the Strickland test, the appellant
bears the burden of proving ineffective assistance by a preponderance of the evidence. Jackson, 877
S.W.2d at 771; Calderon, 950 S.W.2d at 126. Appellant raised her claim of ineffective assistance
by filing a motion for new trial and presented her own testimony at an evidentiary hearing. Trial
counsel also testified at the hearing.


FAILURE TO REQUEST SEVERANCE


 In Point of Error No. One, Appellant contends that she was denied effective assistance of
counsel because her lawyer failed to request a severance from her co-defendant. In Point of Error
No. Two, she claims that counsel failed to advise her of the disadvantages of a joint trial. Article
36.09 provides:

 Two or more defendants who are jointly or separately indicted or complained against
for the same offense or any offense growing out of the same transaction may be, in
the discretion of the court, tried jointly or separately as to one or more defendants;
provided that in any event either defendant may testify for the other or on behalf of
the state; and provided further, that in cases in which, upon timely motion to sever,
and evidence introduced thereon, it is made known to the court that there is a
previous admissible conviction against one defendant or that a joint trial would be
prejudicial to any defendant, the court shall order a severance as to the defendant
whose joint trial would prejudice the other defendant or defendants.


Tex.Code Crim.Proc.Ann. art. 36.09 (Vernon 1981). As a general rule, when two defendants are
indicted for the same offense, they should be tried jointly. See id. However, the trial court has the
discretion to order separate trials. Id. Appellant had an absolute right to a severance only if Nixon
had prior admissible convictions and Appellant did not, or if a joint trial would be prejudicial to her. 
Tex.Code Crim.Proc.Ann. art. 36.09; see Jackson v. State, 504 S.W.2d 488, 489 (Tex.Crim.App.
1974).

 If the trial court is required to grant a motion to sever and counsel fails to ask for it, the
appellant will be able to show that trial counsel was ineffective. Haggerty v. State, 825 S.W.2d 545,
547 (Tex.App.--Houston [1st Dist.] 1992, no pet.). Similarly, if the trial court would have abused
its discretion by failing to grant a motion to sever, an appellant will be able to show that trial counsel
was ineffective by failing to move for severance. Id.

 There is no evidence in the record to suggest that Nixon had prior admissible convictions. 
Therefore, Appellant will prevail only if a joint trial was prejudicial to her. Proof that demonstrates
differing degrees of culpability among defendants is not sufficient to warrant separate trials. Silva
v. State, 933 S.W.2d 715, 719 (Tex.App.--San Antonio 1996, no pet.). The co-defendants' positions
must instead be mutually exclusive so that the jury, in order to believe the core of one defense, must
disbelieve the core of the other. See Goode v. State, 740 S.W.2d 453, 455 n.2 (Tex.Crim.App.
1987), quoting United States v. Lee, 744 F.2d 1124, 1126 (5th Cir. 1984). Here, however, the jury
would not necessarily have to disbelieve Appellant's contention that she didn't know what was in
the bag in order to believe Nixon's contention that he didn't know what was in the bag. Nixon did
not testify that Appellant knew what was in the bag or that he saw Appellant place the cocaine in the
bag. In fact, the only real conflict in the testimony was who owned the bag. Appellant testified that
Nixon brought the portfolio from his apartment, put it in her truck and carried it to the jail's security
checkpoint. Nixon testified that Appellant had the bag in her truck when she picked him up and
asked him to carry it inside for her. "Defendants may disagree on the facts not comprising the core
of their defenses without generating the kind of prejudice that mandates severance." See Goode, 740
S.W.2d at 455 n.2, quoting Lee, 744 F.2d at 1126. The jury could have believed either Appellant
or Nixon, or both, or neither. The core of the defenses were not in conflict and a joint trial was not
prejudicial as a matter of law. 

 A request for severance, when it is not required as a matter of law, is a purely tactical
decision to be made by trial counsel. Woods v. State, 998 S.W.2d 633, 635 (Tex.App.--Houston [1st
Dist.] 1999, pet. ref'd). At the hearing on the motion for new trial, counsel testified that he
considered filing a motion to sever and in fact discussed the issue with Appellant, Nixon's lawyer,
and other attorneys. Counsel also admitted that the judge inquired several times as to whether
Appellant wanted to sever her case. Because the attorneys he consulted had differing opinions, he
left the decision to Appellant. Counsel testified that Appellant was aware that she would be tried
with Nixon and she knew the advantages and disadvantages of a joint trial. Because Appellant
believed she could explain to the jury what happened and wanted to confront Nixon in front of the
jury, she did not want a severance. Counsel characterized his trial strategy as follows:

 The strategy was that she [Appellant] was going to show that the man [Nixon] was
the perpetrator of the crime. And she felt she could -- you know, he was an older
gentleman with a lot of experience, and she was just a young girl with not much
experience and he took advantage of her. 


He acknowledged that Appellant and Nixon were pointing fingers at each other and that Nixon
directly implicated Appellant. However, he believed that he had no other choice because he could
not show prejudice. See Haggerty, 825 S.W.2d at 548 (involving co-defendants charged with
burglary, and one defendant claimed he was not guilty of burglary but merely trespassing, and the
other defendant committed the burglary without his participation; court found that clear prejudice
was not shown and severance was not mandated). Appellant has not shown by a preponderance of
the evidence that counsel was ineffective or that his performance was deficient. Points of Error One
and Two are overruled.

FAILURE TO OBJECT TO ADMISSION OF ORAL STATEMENT

 In Point of Error No. Three, Appellant contends she was denied effective assistance because
her trial counsel failed to object to the admission of her oral statement. In order for an accused's
statement to be admissible, the statement must be in writing, or electronically recorded, and show
on its face that the accused was made aware of her rights. See Tex.Code Crim.Proc.Ann.
art. 38.22, §§ 2, 3 (Vernon Pamphlet 2004); Garcia v. State, 919 S.W.2d 370, 378 (Tex.Crim.App.
1994). However, Section 5 provides: "Nothing in this article precludes the admission of . . . a
voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the
credibility of the accused as a witness." Tex.Code Crim.Proc.Ann. art. 38.22, § 5; Thomas v.
State, 693 S.W.2d 7, 11 (Tex.App.--Houston [14th Dist.] 1985, pet. ref'd)(holding oral in-custody
statements of an accused are admissible for impeachment purposes). 

 At the motion for new trial hearing, counsel testified that his failure to object to admission
of the oral statement was a matter of trial strategy. He discussed with Appellant both the statement
she made to the detective after she was in custody and her anticipated testimony at trial. He knew
the statement would come in as impeachment evidence. Appellant's version differed. She did not
know she would be testifying until the day of trial and she was never told the implications of
testifying. Applying the Strickland analysis, Appellant must show that trial counsel's performance
was deficient by a preponderance of the evidence. His trial strategy falls within the objective
standard of reasonableness under prevailing professional norms. Point of Error No. Three is
overruled. 

FAILURE TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH


 In Point of Error No. Four, Appellant challenges her attorney's failure to suppress the
evidence from the search of her truck. At the hearing on the motion for new trial, the State stipulated
that the search was conducted without a warrant but believed probable cause existed. Defense
counsel testified that he thought Appellant gave the police her keys and told them to go get the truck. 
Admittedly, he did not file a motion to suppress.

 Consent to search is one of the well established exceptions to the constitutional requirements
of both a warrant and probable cause. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct.
2041, 36 L.Ed.2d 854 (1973); Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000).

The record suggests that Appellant consented to the search and she has failed to challenge the
voluntariness of her consent on appeal. Instead, she relies on the lack of probable cause and the
premise that "the mere arrest of a defendant cannot be construed to authorize the seizure of his
automobile when the arrest took place two or more blocks away from the automobile." She further
contends there was no evidence that the truck was impeding the flow of traffic or was a danger to
public safety. See Benavides v. State, 600 S.W.2d 809, 812 (Tex.Crim.App. 1980). 

 If counsel had no basis to believe that consent to search was not freely and voluntarily given,
then his failure to challenge the fruits of the search was not unreasonable. See Yuhl v. State, 784
S.W.2d 714, 717 (Tex.App.--Houston [14th Dist.] 1990, pet. ref'd). Moreover, both Appellant and
Nixon testified that the cocaine had been in Appellant's truck. Under the second prong of Strickland,
Appellant cannot show that she was prejudiced by the sniff search, which revealed only that narcotics
had been present in the truck at one time. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d
at 693; Jackson, 877 S.W.2d at 771. Point of Error No. Four is overruled.

CUMULATIVE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL


 In Point of Error No. Five, Appellant argues that defense counsel's overall performance
constitutes ineffective assistance of counsel. She alleges three separate instances of deficient
conduct in addition to those errors raised above:

 

 counsel failed to object to the admission of Nixon's written statement;
 counsel failed to advise Appellant of the disadvantages of testifying at trial; and
 counsel failed to conduct meaningful voir dire.



Admission of Nixon's Statement


 Appellant complains that counsel failed to properly review Nixon's redacted statement. As
a result, prejudicial information was admitted concerning her husband's association with the drug
trade. At the evidentiary hearing, counsel testified that Nixon's comments regarding Appellant's
husband were redacted as a result of his motion in limine. Counsel did not believe Nixon's
statement was prejudicial because it was the same as his trial testimony. Although counsel admitted
he did not ask for a limiting instruction, he reiterated that his strategy was for Appellant to controvert
all statements made by Nixon, and he believed she could convince the jury that she was the innocent
party.

 We have reviewed Nixon's statement and found one unredacted sentence regarding
Appellant's husband: "I told her that this was not good because he [Appellant's husband] had been
picked up twice within a month for possession." Because trial counsel should have more carefully
examined the statement before allowing its admission at trial, his conduct was arguably deficient. 
Jackson, 877 S.W.2d at 771. However, Appellant must also establish that his performance
prejudiced her defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The
statement did not make Nixon's testimony more believable than Appellant's, and it did not make
Appellant more culpable of the charge against her. Appellant merely contends that the statement was
prejudicial without proving that but for counsel's failure, the result of her trial would have been
different. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Appellant has not
undermined our confidence in the outcome of her trial. Id. Failure to Warn About the Detriments of Testifying at Trial

 Appellant next complains that her attorney did not properly inform her of the detriments of
testifying on her own behalf or that her oral statement could be admitted for impeachment purposes. 
She argues that her statement was highly prejudicial because she admitted possession of the cocaine. 
Yet again, Appellant and her trial counsel offered divergent testimony. Counsel testified that he did
prepare Appellant and that he felt it was beneficial for her to testify. He did not see any downside
to her testimony because he thought her story was convincing. Nevertheless, he informed her that
her oral statement would come into evidence if she testified at trial. 

 Appellant has failed to show by a preponderance of the evidence that trial counsel's
performance was deficient or that he failed to warn her of the disadvantages of her testifying. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; see generally Mallet v. State, 9
S.W.3d 856, 867 (Tex.App.--Fort Worth 2000, no pet.)(finding Appellant's offer of evidence, which
included his own affidavit and the affidavit of appellate counsel, to be insufficient to establish that
trial counsel failed to communicate with and prepare Appellant to testify). She does not argue that
she would not have testified had she known that her oral statement would come in as impeachment
evidence. At the hearing on her motion for new trial, Appellant acknowledged that she never told 
counsel she didn't want to testify and that she didn't have an opinion one way or the other. 
Appellant has thus failed to prove any prejudice or that the outcome of the trial would have been any
different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Failure to Conduct Meaningful Voir Dire

 Finally, Appellant contends that counsel failed to conduct meaningful voir dire because the
panel was not asked about (1) prejudice against cocaine use other than punishment, (2) prior
experiences with drugs that might cause bias, or (3) bias against a substitute teacher using drugs. 
She further claims that considering the gravity of the offense, counsel's two-page voir dire was far
too brief. 

 Counsel's sole question to the venire panel inquired whether any prospective juror wanted
to tell the judge any reason why he or she could not be fair. However, during the process the judge
asked questions regarding the news media, punishment, the offense of possession of cocaine and
punishment, suspended sentences, the indictment, the burden of proof, and the standard of proof. 
The prosecutor questioned prospective jurors regarding legalization of drugs, feelings about law
enforcement, the bifurcated trial system, the range of punishment, bias due to drug use by family or
friends, moral or religious reasons for not assessing guilt or innocence and punishment, and
concentration problems. Nixon's trial counsel inquired whether jurors could consider probation and
whether jurors would be biased because they were victims of crime, knew people who worked in the
police department, border patrol, or DEA, or had prior jury service. 

 A brief voir dire need not equate with ineffectiveness of counsel. Jackson v. State, 491
S.W.2d 155, 156 (Tex.Crim.App. 1973). The length may be dictated by the trial strategy of counsel. 
Id. Furthermore, topics covered by the court, the prosecutor, or co-defendant's counsel need not be
repeated. See Boitnott v. State, 48 S.W.3d 289, 294 (Tex.App.--Texarkana 2001, pet. ref'd);
Williams v. State, 970 S.W.2d 182, 184 (Tex.App.--Houston [14th Dist.] 1998, pet. ref'd). When
the record is silent regarding counsel's trial strategy, we will not speculate about why counsel acted
as he did. Jackson, 877 S.W.2d at 771-72. Instead, we will presume he had a plausible reason for
asking the questions that he did and that he acted within the range of reasonable professional
assistance. Appellant has failed to overcome the presumption that counsel's actions were sound trial
strategy. Moreover, Appellant does not argue that any harm resulted from counsel's failure to
conduct a more extensive voir dire or that an objectionable juror sat on the panel as a result. See
Williams, 970 S.W.2d at 184. 

 Appellant urges us to examine the totality of counsel's representation and to find that his
overall performance fell below the objective standard of reasonableness. We decline to find that his
performance fell below this standard. We overrule Point of Error No. Five and affirm the judgment
of the trial court.



March 25, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)